Louisville, St. Louis and Texas Railroad Company v. Barrett, &c.

CASE 90—APPEAL TO CIRCUIT COURT—APRIL 18.

# Louisville, St. Louis and Texas Railroad Company v. Barrett, &c.

APPEAL FROM DAVEISS CIRCUIT COURT.

1. CONDEMNATION OF LAND FOR RAILROAD—PREJUDICIAL ERRORS.— In a proceeding to condemn land for a railroad one of the parties to the controversy should not, in the absence of the other, be allowed to discuss the merits with the commissioners appointed by the court to assess the damages; but such conduct upon the part of one of the owners of the land could not have prejudiced the railroad company in this case, as the damages were assessed by a jury independently of the report of the commissioners.

2. SAME—MEASURE OF COMPENSATION.—In such a proceeding the owner of the land is entitled to the value of the land taken, considering its relation to the remainder of the tract, and also the damages by reason of the depreciation in value of the residue of the land on account of the shape in which it may be left.

3. SAME—COST OF ADDITIONAL FENCING—CASE OVERRULED.—In estimating the compensation to which the land-owner is entitled, the cost

Louisville, St. Louis and Texas Railroad Company v. Barrett, &c.

of additional fencing which will be rendered necessary by reason of the taking of the land is to be included as a part of the direct damage which can not be abated by any benefits arising from the building of the road.

The case of Louisville and Nashville Railroad Co. v. Glazebrook, 1 Bush, 325, in so far as it conflicts with these views, is overruled.

4. Costs.—As the judgment, upon the appeal to the circuit court, was more favorable to appellant than that rendered in the county court, the court did not abuse its discretion in allowing appellant its costs in the circuit court.

HELM & BRUCE FOR APPELLANT.

1. The *ex parte* communication made to the commissioners by the principal defendant in the case rendered their action invalid, and the court should have quashed the report. (Lewis on Eminent Domain, section 420; Peary v. Wolfborough, 37 N. H., 286; Patten's Petition, 16 N. H., 277; Harris v. Woodstock, 27 Conn., 567; Lennox v. Knox & Lincoln R. Co., 62 Me., 322.)

2. In condemnation proceedings it is error to allow the jury to find the value of the strip taken *when considered in its relation to the balance of the tract*, and, in addition, to find damages on account of awkward shapes into which the land is thrown by the road, as the first includes the last. (Asher v. Lou. & Nash. R. Co., 87 Ky.)

3. Under our statutes the damage resulting from the necessity to fence is taken from the consideration of the jury in condemnation proceedings, and land-owners must look to the statute imposing the liability on railroad companies to fence for the enforcement of their rights and the redress of their wrongs on this account. (Lou. & Nash. R. Co. v. Glazebrook, 1 Bush, 226; Jones v. The C. & I. R Co., 68 Ill., 381; Sedalia, Warsaw & Southern R. Co. v. Abell, 18 Mo Appeal, 638.)

SWEENEY, ELLIS & SWEENEY FOR APPELLEES.

1. The value of the land taken is to be arrived at by considering the diminution in value of the entire tract by reason of the taking, without reference to any resulting advantages from the construction and operation of the road. (Covington Short Route Transfer Co. v. Piel, 87 Ky., 267; Asher v. Lou. & Nash. R. Co , Idem, 391.)

2. The amendment to article 1, chapter 55, General Statutes (page 759), gives the right in condemnation proceedings to assess against the railroad company damages arising from the cost of constructing and maintaining fencing made necessary by the road. (Lou. & Nash. R. Co. v. Glazebrook, 1 Bush, 325; Lewis on Eminent Domain, sec. 498.)

3. The railroad must pay the entire cost of the proceeding, though succeeding in reducing the amount appealed from. (Lewis on Eminent

Domain, sec. 562; Matter of New York, West Shore and Buffalo R. Co., 94 N. Y., 294; Schuylkill Nav. Co. v. Kiltera, 2 Rawle, 438; Johnson v. Sutliff, 17 Neb., 428.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

In this proceeding to condemn a right of way through the land of the appellees a total damage of seven thousand nine hundred and fourteen dollars and twenty cents was allowed by the commissioners appointed by the county court. Exceptions having been filed, a trial by a jury resulted in a finding of seven thousand four hundred and forty-seven dollars and seventy-five cents in that court. Upon an appeal by the appellant to the circuit court a verdict for six thousand dollars was rendered, it being recited in it: "This includes fencing."

The appellant now complains of it, contending, first, that its motion made in the circuit court to quash the report of the commissioners should have been sustained, the ground being that the person who is the guardian of one of the appellees, and the agent of the other, went upon the land with the commissioners, the other side not being represented, and pointed out the route of the proposed railroad, and the damages that would be done to the land by its construction. One of the parties to such a controversy should never be allowed to discuss its merits privately with the commissioners in the absence of the other party. Such *ex parte* communications are improper. It is, however, unnecessary to determine the effect of such conduct upon their report, because while it is at least in part the foundation of the proceeding, yet we fail to see how the appellant can now claim to have been

prejudiced by it. The jury in the county court fixed the damages independently of it. A second one did the same in the circuit court, and this appeal is from the judgment upon this last verdict.

The jury were told that in fixing the amount of the direct damages, they should not only consider the value of the land taken, considering its relation to the entire tract, but also the injuries, if any, directly resulting from the taking to the remainder of the tract, the injuries contemplated being those which depreciate the value of the land by reason of the shape in which it may be left, the easements impaired or destroyed, and such additional improvements, if any, as may be necessary to its reasonable enjoyment, such injuries to be considered, however, only so far as they depreciated the value of the land, the finding for direct damages not to exceed the difference in the actual value of the land immediately before and after the appropriation. They were also further instructed as to incidental damages and advantages arising to the land from the operation of the road.

It is contended that they were authorized under these instructions to find damages twice for the same thing, to wit, to give the value of the strip of land taken, considering its relation to the balance of the tract, and also damages on account of the awkward shapes into which the land left might be thrown; and that the former includes the latter.

Undoubtedly one can not recover twice for the same thing; but this the party does not do when he is allowed the value of the land taken, considering its relation to the remainder of the tract, and also dam-

ages by reason of the depreciation of the balance of the land by reason of the shape in which it may be left. This merely means that he is to have for the land taken what it is worth as it is situated, or as a part of the whole tract; and in no other way can he be fairly compensated. In addition to this, if the balance of the land has depreciated in value by being left in bad shape, the loss should be made up to him, or else he is not made whole. Such a diminution in value is as much a taking in constitutional meaning as the use of the road bed by the company. Our Constitution provides that no man's property shall be taken for public use without just compensation being previously made to him; and this is not done unless he receives not only the value of the land actually taken as it is situated to the balance of the tract, but also the decrease in value of the remainder of the tract arising from a portion of the original tract having been condemned.

It was said in the case of Henderson and Nashville Railroad Company v. Dickerson, 17 B. M., 173: "The Constitution secures to the owner of the land just compensation for his property before he can be deprived of it. Its value to him, considering its relative position to his other land, and the other circumstances which may diminish or enhance that value, can alone afford him a just compensation for its loss. To third persons the same quantity of land of equal quality on one of the boundaries of the farm might be of as much value as if it were situated in the middle of the farm; but at the same time its value thus ascertained might be a very in-

adequate compensation to the owner if the land were taken out of the middle of his farm, so as to separate it into different parts, instead of being taken on one of its boundary lines. The real value of the land to the owner as it is actually situated, and not merely its value regarding it as a separate and independent piece of land, he has a right to demand, and nothing less can secure him a just compensation for his property.''

This rule has been reaffirmed by this court in the subsequent cases of Louisville and Nashville Railroad Company v. Thompson, 18 B. M., 735; Elizabethtown and Paducah Railroad Company v. Helm's Heirs, 8 Bush, 681, and Asher v. Louisville and Nashville Railroad Company, 87 Ky., 391. In the last-named case it was expressly held that, to conform to the constitutional requirement above referred to, and afford the owner just compensation, he must be allowed the value of the land actually taken, considering its relation to the entire tract, and also any direct damage diminishing the value of the balance of the tract, arising from the appropriation of a part of the entire tract; and that from the amount so found no deduction could be made for any benefits that might reasonably be expected to accrue from the building and operation of the road.

It is also urged that the instruction, in so far as it authorized the jury to allow for any additional improvements that might be necessary to the reasonable enjoyment of the land left, is erroneous; that this permitted them to find the cost of any fencing that might be necessary to that end as direct dam-

ages; and it is contended, first, that by reason of the act of the Legislature of May 17, 1886 (General Statutes, page 759), no damages of any character can be allowed for fencing; that the Legislature has prescribed a mode of relief for the land-owner as to fencing, which is exclusive; and, second, if this be not so, yet damages arising by reason of the need of additional fencing on account of the taking of a part of the land are consequential, and not direct; that they result not from the appropriation of the land, but from the operation of the road, and that, being consequential, they are subject to set-off by any advantages arising from the building of the road.

The Act named provides that when a railroad has been built ten years, and owns lands and rights of way, and is in operation and assessed for taxation, it shall be upon equal terms and obligations with other land-owners and tax-payers owning adjoining lands in the State, and, upon notice, as provided in the act, from the adjacent owner, must erect and maintain a lawful fence on its proportion of the line. Its seventh section says: "That the provisions of this act shall not apply in any case where any company has furnished the material to build a fence, *or condemned its right of way, and paid the owner or his vendor damages in which the fencing was taken into consideration in estimating damages;* nor be so construed as to require the company to build any fence along its line through any town or city, or across any public or private passway;" and the eleventh section provides: "This act shall not apply to any land where the owner or his vendor has received compensation for fencing said land."

This statute expressly recognizes that in a condemnation proceeding damages may be allowed for the fencing which may be necessary to the enjoyment of the land left. It is unnecessary to consider or construe all of its provisions. It is sufficient that it does not attempt to take away from the land-owner his right to compensation for the needed fencing when his land is condemned. The land not taken is diminished in value to that extent. It is, in effect, *pro tanto* taken; and were his right to compensation in this respect attempted to be taken away, it would be a violation of his constitutional right to compensation before his property can be taken for public use. It is said that the language of the seventh section shows that the act was intended to apply only to cases which had arisen before its enactment, and not to those which might arise in the future. We do not think so, but that a proper construction makes it relate to the time anterior to that when the company may be required to fence its proportion of the line.

It is earnestly contended that the damage arising from the need of fencing is consequential, and not direct, and, therefore, subject to be abated by any benefits arising from the building of the road. In the broad sense of the term all of the damage resulting from the taking of the land is consequential. It results from the taking. Our statute applying to condemnations for railroad uses is not so definite in its terms as to the damage to be allowed as that relating to condemnations for public roads. In the latter case it must be "a just compensation * * * for the land proposed to be taken, and the addi-

tional fencing which will be thereby rendered necessary, and the damage to the residue of the tract beyond the peculiar benefits which will be derived to such residue from the road." In the former it says: "It shall be the duty of said commissioners to view the land and material, and to award to the owner or owners the value of the land or material taken, which shall be stated separately; and they shall also award the damages, if any, resulting to the adjacent lands of the owner, considering the purposes for which it is taken, but shall deduct from such incidental damages the value, if any, of the advantages and benefits that will accrue to such adjacent lands from the construction and prudent operation of the railroad proposed to be constructed."

It is the duty of a court to so construe a legislative act, if it will reasonably admit of it, as to render it constitutional; and the statute relating to the condemnation of land for railroad purposes has uniformly been so construed as to give to the owner the value of the land actually taken, considering its situation to the balance of the tract, and the direct injury to the balance of the tract resulting from the taking, without diminution by the value of any benefits likely to accrue from the construction of the road. If the decrease in value of the balance of the tract by reason of the taking is to be allowed him as direct damage, without diminution by reason of any advantage accruing from the building of the road, upon the ground that this is necessary to fulfill the constitutional requirement of just compensation to him, why should not the damage to him arising from the need of necessary

fencing be included as a part of it? The need is produced by the taking. The balance of the land is lessened that much in value by the taking, and it is certainly necessary to pay him this damage to make him whole. That much of his property has in effect been taken from him by the condemnation.

It is said in Lewis on Eminent Domain, section 498: "If, in view of the *probable* future use of the land, additional fencing will be necessary, of which the jury or commissioners are to judge, and the owner must construct the fence if he has it, then the land is depreciated in proportion to the expense of constructing and maintaining such fencing. Nothing can be allowed for fence *as fence.* The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it."

While the author, referring to the decision of another State, says nothing can be allowed "for fence *as fence,*" yet it seems to us its being so called is immaterial. It is really for the depreciation in value of the land left by the condemnation; and many cases, as the author says, allow the cost of fencing as a specific item. If a portion of the owner's land be taken, and the value fixed at a thousand dollars, but the remainder of the land be left in such shape that he must, in order to its necessary enjoyment, at once pay out a thousand dollars for fencing, it certainly can not be said that he has received a just compensation for his land, and that the constitutional requirement in that respect has been fulfilled. Such expense is to our minds a part of the direct damage. It merely fills the place of a value that has been taken

from him by the taking of his land. The case of Louisville and Nashville Railroad Company v. Glazebrook, 1 Bush, 325, in so far as it conflicts with these views, is overruled.

The judgment upon the appeal to the circuit court was more favorable to the appellant than that rendered in the county court. No rule of law was violated or discretion abused by the appellant being allowed its costs in the circuit court.

The judgment is, therefore, affirmed upon both the original and the cross-appeal.