Case 71.—CONDEMNATION PROCEEDINGS BY BIG SANDY
RAILWAY CO. AGAINST ANNIE L. DILS, &c.—May 23.

## Big Sandy Ry. Co. v. Dils, &c.

Appeal from Pike Circuit Court.

A. J. KIRK, Circuit Judge.

From the judgment of the circuit court rendered on appeal from the county court, plaintiff appeals. Reversed.

Railroads—Condemnation Proceedings—Appeal to Circuit Courts—
    Imperfect Transcripts—Amendment—Trial in Circuit Court—
    Erroneous Instruction.

1. Railroads—Condemnation Proceeding—Appeal to Circuit Courts
    —Imperfect Transcript — Amendment — In taking an appeal
    from the county court to the circuit court in proceedings to
    condemn land, secs. 839 and 840, Ky. Stats., are to be read
    together, and require the appellant to file the transcript of
    the orders of the county court, a statement of the parties
    to the appeal, and execute bond within thirty days after
    the judgment in the county court. Where a good appeal
    bond was filed and an imperfect transcript which contained
    an imperfect statement of the parties to the appeal, it was
    proper for the circuit court, under sec. 134 of the Civil Code,
    to allow the transcript to be amended so as to conform to
    the requirements of the statutes.

2. Same—Trial in Circuit Court—Erroneous Instructions—On the
    trial of a proceeding by a railroad company to condemn a
    strip of land 2 71-100 acres taken alongside the county road
    just outside the boundary of a town of the fifth class, the
    court instructed the jury that "in fixing the value of the land
    taken and the damages to the abutting property, the jury
    may consider its location and use to which the land was
    adapted, together with the change made necessary in, or
    discontinuance of, the county road over or in front of said
    property, if any. They will also find for the defendant such
    sum as they believe from the evidence they are entitled to
    for extra fencing, if anything." Held—That said instruction
    did not present to the jury the proper view of the case, as

nothing was said about setting off the incidental damages against the incidental advantages.

3. Same—The court should have told the jury in the first instruction that in estimating the direct damages they should allow such a sum as they deem from the evidence is the fair and reasonable value of the strip of land taken, considering it in relation to the entire tract; also such other direct damages, if any, as directly result to the remainder of the tract by reason of the situation in which it is placed by the taking of the strip, and such additional fencing and other improvements, if any, as may be necessary to the reasonable enjoyment of the remaining land by reason of the taking of the strip; but that their finding of direct damages should not exceed in all the amount which they may believe from the evidence is the difference between the actual value of the entire tract immediately before and the actual value of the remainder immediately after the taking of the strip, excluding from both estimates any enhancement of the land by reason of the building or operation of the railroad.

4. By another instruction the court should have told the jury that they should also take into consideration all the advantages and disadvantages which may be reasonably anticipated to result from the prudent construction and operation of the proposed railway, and if the balance be against the owners of the land, then to the extent that such balance diminishes its market value they should also find for them incidental damages in addition to the direct damages referred to in the first instruction; but that if the incidental damages or enhancement of the land in value from the prudent construction and operation of the railroad equal or exceed the incidental disadvantages or depreciation in value, they should find for the defendant only the direct damages as set out in the first instruction.

J. M. YORK for appellant.

W. H. WADSWORTH of counsel.

### AUTHORITIES CITED.

1. The trial court should have dismissed the appeal because there was no transcript of the orders of the county court filed nor a statement of the parties to the appeal as required by sec. 840, Ky. Stats.

2. The verdict of the jury was too indefinite to authorize the rendition of a judgment, there being three distinct propositions submitted with a general finding for appellees. The finding

Big Sandy Ry. Co. v. Dils, &c.

should have been a certain amount for the lands appropriated, an amount for damages to the residue, if any, and the damages for extra fencing.

3. Instruction No. 1, given by the court, is absolutely incorrect and misleading in this: The court directed the jury to find the market value of the land appropriated without laying down any rule by which it could be ascertained. The court erred in calling the jury's special attention to certain parts of the evidence, and thereby giving undue prominence to portions of appellees' evidence. The instruction required the jury to find double damages. (Lewis on Eminent Domain, 2d Ed., vol. 2, sec. 428; St. L. R. Co. v. Barrett, 91 Ky., 487.)

4. Instruction No. 2 is erroneous in telling the jury that nine could make a verdict. The number nine is a creature of the statute, and can not be given in any case where the trial is required, as in this case, to be had in accordance to the course of the common law. (Sec. 242 present Constitution of Kentucky.)

A. J. AUXIER for appellees.

### CLASSIFICATION OF QUESTION AND AUTHORITIES.

1. Condemnation for railroad purposes and appeal to circuit court. (Ky. Stats., secs. 839, 840, 4356, 4303; Freeman, &c. v. Cook, &c., 24 Ky. Law Rep., 319; Lewis Eminent Domain, secs. 254 and 254a.)

2. Error of court in refusing to dismiss appeal from county court not ground for reversal by Court of Appeals if such error was not made a ground for new trial in circuit court.

3. Condemnation for railroad, evidence and instructions. (Lewis on Eminent Domain, sec. 436, and notes 47 and 48; St Louis & N. O. R. R. Co. v. Rottgering, 26 Ky. Law Rep., 1167.)

4. No reversal for admitting incompetent testimony not objected to, and no reversal for error in instructions where appellant offered no instructions on the point. Nor will court reverse when instructions given are based on appellant's own hypothesis of the case. (Harris v. Southern Railway Co., 76 S. W., 161 [Ky.].)

5. Nine of jury may make a verdict in condemnation case. (Constitution of Kentucky, sec. 248; Ky. Stats., sec. 2268.)

6. Items of damage need not be stated separately by commissioners or jury. (Ky. Stats., secs. 836, 839; Lewis on Eminent Domain, sec. 512.)

8. Interest on judgment. (Constitution of Kentucky, secs. 13 and 242; Lewis on Eminent Domain, sec. 499.)

## OPINION BY CHIEF JUSTICE HOBSON—Reversing.

On March 23, 1903, the Big Sandy Railway Company filed in the Pike County Court its petition to condemn as part of its right of way a strip of land, belonging to John A. Dils' heirs, 100 feet wide and 1,181 feet long, containing 2 71-100 acres. Commissioners were appointed, who valued the strip at $1,000, and fixed the damages to the remainder of the tract at $400.00. The defendants filed exceptions to the commissioners' report, and, the case being heard by a jury, a verdict was rendered fixing the value of the strip taken and the damages to the residue of the tract at $3,500. The defendants were not satisfied with the verdict of the jury, and took an appeal to the Pike Circuit Court. In the circuit court the case was tried anew, and a verdict and judgment were obtained, fixing the damages at $8,800, and from this judgment the railroad company appeals.

When the case reached the circuit court the railroad company entered a motion to dismiss it. The court overruled the motion, and the correctness of this ruling is the first question arising on the appeal. The judgment in the county court was rendered on April 23, 1903. On May 14th the defendants filed with the clerk of the circuit court an attested copy of the judgment, and executed before him an appeal bond. He thereupon issued a supersedeas and a summons. Some days after this the county clerk made a copy of the other orders entered in the county court, and pinned them to the copy of the judgment which had been filed in the circuit court; but no statement of the parties to the appeal was filed until the motion to dismiss the appeal was entered by the railroad company at a subsequent term of the circuit court. A statement of the parties to the appeal was then tendered, and the court allowed it to be filed.

Sec. 839, Ky. Stats., 1903, provides: ''Either party

may appeal to the circuit court, by executing bond as required in other cases, within thirty days, and the appeal shall be tried de novo.''

Sec. 840 further provides: ''The appeal from the county court shall be taken by filing with the clerk of the court to which the appeal lies a statement of the parties to the appeal, and a transcript of the orders of the county court, and thereupon the said clerk shall certify to the clerk of the county court that said appeal has been filed, and the clerk of the county court shall immediately transfer the original papers to the clerk of the court to which the appeal is pending.''

It will be observed that by sec. 839 either party may appeal by executing the bond within 30 days, and that by sec. 840 the appeal shall be taken by filing with the clerk of the court to which the appeal lies a statement of the parties to the appeal and a transcript of the orders of the county court. The two sections are to be read together. It is incumbent upon the appellant to file the transcript of the orders of the county court, a statement of the parties to the appeal, and execute the bond within 30 days after the judgment in the county court. In the case before us the bond was executed in time, and a partial transcript of the orders of the county court was filed, which showed the parties to the appeal sufficiently to enable the clerk to issue a summons and a supersedeas, which were issued in time. In other words, a good appeal bond was executed, and an imperfect transcript was filed, which contained an imperfect statement of the parties to the appeal. After the 30 days had expired, the court, instead of dismissing the appeal, allowed the appellant to file a full statement of the parties to the appeal and a full transcript of the orders of the county court.

Sec. 134 of the Civil Code of Practice is as follows: ''The court may, at any time, in furtherance of jus-

tice, and on such terms as may be proper, cause or permit a pleading or proceeding to be amended, by adding, or striking out the name of a party; or by correcting a mistake in the name of a party, or a mistake in any other respect; or by inserting other allegations material to the case; or, if the amendment do not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved."

The purpose of this section of the Code is to permit amendments in just such cases as this, where by some irregularity the proceeding does not conform to the requirements of the law. In Bush v. Lisle, 86 Ky., 504, 9 Ky. Law Rep., 667, 6 S. W., 330, an imperfect transcript was filed in this court, and, after the time had expired for filing the transcript, it was insisted that the appeal should be dismissed, but the court held otherwise and allowed the imperfect transcript to be perfected.

In Puff v. Huchter, 78 Ky., 140, the plaintiff failed to file a petition in the magistrate's court, but after appeal to the circuit court he was allowed to file an amended petition setting up his cause of action. In the same way it has been held that a defective bastardy warrant, or a defective warrant for forcible entry or detainer, or defective warrant for a misdemeanor, may be amended on appeal. (Commonwealth v. Cantrell, 45 S. W., 72, 20 Ky. Law Rep., 24; Louisville v Wehmhoff, 116 Ky., 812, 76 S. W., 876; 25 Ky. Law Rep., 995; Forsythe v. Huey, 74 S. W., 1088, 25 Ky. Law Rep., 147.)

In Galloway v. Bradburn, 119 Ky., 49, 82 S. W., 1013, 26 Ky. Law Rep., 977, it was held that where a defective appeal bond is executed in due time in a contested election case a good and sufficent bond may be given under this provision of the Code after the time

for the execution of the bond has expired. In that case the court, among other things, said; referring to the provision of the Code above quoted: ''As the Code regulates proceedings in all actions, so this section allows an amendment of all proceedings in the process of an action. It was intended by it to provide in general for the amendment of anything that was found to be defective in the progress of an action, the purpose being to perfect rather than to destroy. It is not limited to mistakes in pleadings, but it is intended to cover any kind of a mistake and to allow an amendment. At common law, and before the passage of the modern statutes, very many mistakes or clerical errors were cause for the dismissal of an action or the defeating of justice.''

Under the rule laid down in the cases cited the circuit court properly allowed the appeal to be perfected, the purpose of the provision of the Code being to prevent just such slips as this defeating the administration of justice.

On the trial in the circuit court the evidence for the property owners tended to show that the strip of land taken lay alongside of the county road just outside of the town boundary of Pikeville,the road being a continuation of College street; that the strip was valuable for town lots, and could be cut up into something like 24 lots of 50 by 100 feet, and that other lots near this property, and between it and town, had sold for $400 and $500. The witnesses for the property owners valued the strip taken at from $8,000 to $15,000; they fixed the damages to the remainder of the tract at from $1,000 to $5,000. On the other hand, the witnesses for the railroad company fixed the value of the strip taken at $1,000 to $2,000, and the damages to the remainder of the tract at from $400 to $500. The court instructed the jury as follows. ''The jury will find for

the defendants (the property owners) such sum as
they may believe from the evidence the defendants
have been damaged by reason of the plaintiffs taking
the land described in the petition, and they will deter-
mine this by finding from the evidence the true market
value of the land taken at the time it was taken.   They
will also find for the defendants such sum as they may
believe from the evidence the defendants have sus-
tained in damages to the abutting property (if any-
thing) by reason of the plaintiff taking said property
and, in fixing the value of the land taken and dam-
ages to the abutting property, the jury may consider
its location and use to which the land was adapted,
together with the change made necessary in, or dis-
continuance of, the county road over or in front of
said property, if any.   They will also find for the de-
fendants such sums as they believe from the evidence
the defendants are entitled to for extra fencing, if
anything.  (2) Nine of the jury may find a verdict,
in which event they must all sign the same.''

In Elizabethtown & Paducah Railroad Company v.
Helm's Heirs, 71 Ky., 684, this court, after stating the
difficulties growing out of the application of the gen-
eral rules governing the subject, said: ''To avoid such
difficulties, it is necessary to ascertain, first, the value
to the owner of the land proposed to be taken, and,
second, the amount, if any, which the disadvantages
and inconveniences will overbalance the advantages
to the land not taken from the use to which the public
proposes to devote that which is taken.   The first ques-
tion can be most readily and fairly determined by
ascertaining the value of the entire tract of land, ex-
cluding the enhancement resulting from the contem-
plated improvement; then (still excluding the enhance-
ment) what will be its value after the appropriation of
the portion, or of such estate therein as may be pro-

·posed to be taken? The difference in value thus found is the true compensation to which the owner is entitled."

Then after giving some reasons for its conclusions, the court disposed of the second question in these words: "Let a survey be taken of all the advantages and disadvantages, which may be reasonably anticipated to result from the prudent construction and operation of the proposed railway, and if the balance then be against the owner of the land, then, to the extent that such balance diminishes its market value, he should have a judgment on account of incidental damages; otherwise, of course, he is entitled to nothing."

The rule thus announced has been since maintained by the court. (Asher v. L. & N. R. R. Co., 87 Ky., 391, 10 Ky. Law Rep., 185, 8 S. W., 854; L. & N. R. R. Co. v. Asher, 15 S. W., 517, 12 Ky. Law Rep., 815; L., St. L. & T. R. R. Co. v. Barrett, 91 Ky., 487, 13 Ky. Law Rep., 57, 16 S. W., 278; W. Va., &c., R. R. Co. v. Gibson, 94 Ky., 234, 15 Ky. Law Rep., 7, 21 S. W., 1055.) In these cases it has been held that the cost of additional fencing that will be rendered necessary by the taking of the land is to be included as part of the direct damages, which can not be abated by any benefits arising from the building of the road. The owner is entitled to damages by reason of the depreciation in value of the land on account of the shape in which it may be left or the situation in which it may be placed. Nothing can be deducted from the direct damages, which include the value of the strip taken, the depreciation in value of the residue of the tract, and the additional fencing rendered necessary. But damages for consequential inconvenience or injury resulting from the prudent construction and operation of the railroad may be set off against the advantages

which may be reasonably anticipated to result from the
prudent construction and operation of the railroad,
and, if the advantages equal or overbalance the dis-
anvantages, nothing should be allowed for the lat-
ter.  The instructions of the circuit court did not pre-
sent to the jury the proper view of the case, as noth-
ing was said about setting off the incidental damages
against the incidental advantages.  Both parties on
the trial conducted the examination of their witnesses
in the same way.  Neither undertook to show by any
witness what the value of the entire tract of land was,
or what the remainder would be worth after the tak-
ing of the strip sought to be condemned.  The case
was left to the jury largely upon the mere opinions
of the witnesses, without a statement of the facts on
which the opinions were based, and this may account
for the verdict.  We know judicially that Pikeville
is a town of the sixth class, and it is hard for us to
understand why 2 71-100 acres of land a quarter of
a mile beyond the town boundary is worth anything
like $8,000.  The facts in the record do not show any
substantial damage to the remainder of the tract,
except that a road will have to be opened on the tract
along the railroad.  On another trial the court will
require the parties to have the witnesses as to value
fix the value of the entire tract of land, excluding
the enhancement resulting from the building of the
railroad; also the value of the remainder of the tract
after the taking of the strip by the railroad company,
still excluding any enhancement from the building
of the railroad; the difference in value thus found is
the measure of the direct damages to which the owner is
entitled.  The witnesses may state what additional
fencing will be rendered necessary, and its value.
In lieu of instruction 1, the court should have in-
structed the jury that in estimating the direct dam-

ges they should allow such a sum as they deem from the evidence is the fair and reasonable value of the strip of land taken, considering it in relation to the entire tract; also such other direct damages, if any, as directly result to the remainder of the tract by reason of the situation in which it is placed by the taking of the strip, and such additional fencing or other improvements, if any, as may be necessary to the reasonable enjoyment of the remaining land by reason of the taking of the strip; but that their finding of direct damages should not exceed in all the amount which they may believe from the evidence is the difference between the actual value of the entire tract immediately before, and the actual value of the remainder immediately after the taking of the strip of 2 71-100 acres, excluding from both estimates any enhancement of the land by reason of the building or operation of the railroad.

By another instruction the court should have told the jury that they should also take into consideration all the advantages and disadvantages which may be reasonably anticipated to result from the prudent construction and operation of the proposed railway, and if the balance be against the owners of the land, then, to the extent that such balance diminishes its market value, they should also find for them incidental damages in addition to the direct damages referred to in the first instruction; but that, if the incidental advantages or enhancement of the land in value from the prudent construction and operation of the railroad equal or exceed the incidental disadvantages or depreciation in value, they should find for the defendant nly the direct damages, as set out in the first instruc-⁺ion.

Under the first instruction compensation is made for the property taken, without regard to the use to which

it may be applied, and against this no offset can be made. Under the second instruction everything incidental to the prudent building and operation of the railroad, depreciating or enhancing the value of the remaining land, may be offset one against the other, and only the balance should be found in favor of the property owner in case the depreciation exceeds the enhancement.

Judgment reversed and cause remanded for a new trial.