## Sandy Valley & Elkhorn Railway Company v. Hughes, et al.

(Decided October 8, 1918.)

### Appeal from Pike Circuit Court.

1. Damages—Measure of Damages—Evidence.—Where defendant agreed to remove earth and rock from a portion of plaintiffs' land to a level with its track so as to render the space available for building purposes, upon its failure to do so the plaintiffs were entitled to recover damages, the measure of which would be the difference in the value of the entire farm without the earth and

rock removed and its value had it been removed according to contract. But the evidence upon this point should have been directed to the difference between such values at the time of the violation of the contract, and not to the time when the trial was had.

2. Appeal and Error—Excessive Damages.—Where the verdict of the jury is so excessive and so much against the weight of the evidence as to strike the mind at first blush that it was the result of passion and prejudice on the part of the jury it will be set aside as excessive, and as being flagrantly against the evidence.

3. Appeal and Error—Excessive Damages.—In determining whether a verdict is flagrantly against the evidence or is excessive the court is not confined alone to the testimony given by the witnesses, but may look not only to the reasons which they assign for their testimony, but may also take into consideration the fact that the verdict is against the teachings of common experience and observation.

4. Appeal and Error—Excessive Damages.—Defendant agreed to remove earth and rock from 37/100 of an acre of ground to the level of its track. It removed earth and rock to within 28 feet of the surface of its track, and in a suit to recover damages for a failure to remove all of it the jury returned a verdict in favor of plaintiff for $8,000.00. Held, that, under the evidence and measured by the rule just stated, the verdict is flagrantly against the evidence and excessive.

AUXIER, HARMAN & FRANCIS and HAGER & STEWART for appellant.

ROSCOE VANOVER and E. J. PICKLESIMER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is the second appeal of this case. The first opinion on the former appeal is reported in 172 Ky. 65, and the second opinion, rendered upon a petition for rehearing, is reported in 175 Ky. 320. We refer to those opinions for a fuller statement of the facts and questions involved than it is our purpose to make now.

Briefly, appellees, Hughes and wife, who were plaintiffs below, after selling a right of way to appellant, who was defendant below, through their farm in Pike county for the sum of $1,000.00, entered into a written contract with the defendant by which it agreed to take stone from a small plat of ground adjoining the right of way, being a portion of a rocky point projecting up to or near Shelby creek, down to the level of its track, so that after the stone was removed the place would be suitable for a building site. Under the latter contract the defend-

ant was not compelled to remove any of the stone from this plat of ground, which contained only 37-100 of an acre, but if it attempted to remove it, the contract required that it should be done to the level of the right of way. A portion of the stone from the top of the cliff was removed, but defendant lacked 28 feet of removing it down to a level with its right of way. This suit was brought by the plaintiffs to recover because of the failure of the defendant to remove all of the stone as it had agreed to do, and upon the first trial there was a verdict and judgment in favor of plaintiffs for the sum of $10,000.00, which was reversed in the first opinion, *supra*, for errors therein pointed out. Upon a petition for rehearing the rule for measuring the damages which was applied by the trial court and affirmed in the first opinion was held to be erroneous, and the first opinion was modified upon that point as set forth in the second opinion. Upon a return of the case to the circuit court another trial was had, at which the jury returned a verdict in favor of the plaintiffs for the sum of $8,000.00, upon which judgment was rendered, and defendant's motion for a new trial having been overruled, it prosecutes this appeal.

Various grounds are relied on as cause for a reversal, but we deem it unnecessary to consider any of them except (1) incompetent testimony admitted on behalf of plaintiffs, to which the defendant objected at the time; (2) that the verdict is excessive, and (3) that the verdict is flagrantly against the evidence. Considering these in the order mentioned, the incompetent testimony complained of is that plaintiffs' witnesses were permitted to state the difference between the value of plaintiffs' farm with the stone not removed and left, as it was on the small plat of ground, and its value if the stone had been removed to a level with defendant's right of way as of date when the witnesses were testifying upon the trial. Clearly plaintiffs' cause of action accrued upon the breach of defendant's contract to remove the stone as it had agreed to do in its written contract, which, as we understand it, was in 1913. Changed conditions brought about by a rapid development of the country could not be permitted to enter into the rights of the parties when they were sought to be adjusted through a suit in a court of justice. Plaintiffs' farm may have

very greatly enhanced in value between the date of the breach of the contract, when the cause of action accrued and the rights of the parties became fixed, and the date of the trial several years thereafter. Plaintiffs' testimony upon the extent of their damages should have been confined to the difference in value of their farm at the time defendant violated its contract if the earth and stone had been removed down to the level of the railroad grade and left the plat of ground in question in condition suitable for building purposes.

The instruction which this court authorized to be given in the second opinion, *supra*, is not in conflict with what we have just said, for it refers to the condition of the farm if the stone "had been reduced," &c., and the words found therein—"in its present condition"—did not literally mean and refer to the present moment, for if so it would have been confined to the precise time when the words were written by this court. Necessarily they referred to the time when the plaintiffs were damaged, if at all, which was the time when the contract was violated and their cause of action accrued. We therefore think that the error in permitting the evidence to be introduced upon this point in the form discussed was prejudicial to defendant's substantial rights entitling it to a new trial, since the record shows that there has been considerable advancement in the value of land in that vicinity from the time of the violation of the contract until the time of the second trial of the case now being reviewed.

Since grounds (2) and (3) are more or less related, they will be considered together. It would unnecessarily encumber this opinion and serve no useful purpose to consider in detail the testimony of each witness introduced by both sides upon the question of the extent of plaintiffs' damages. Briefly, it is that plaintiffs introduced, besides James Hughes, some five witnesses, who, in a very unsatisfactory as well as unconvincing manner, testified that the difference in value of plaintiffs' farm at the time of the trial with and without the removal of the earth and stone complained of would be from $10,000.00 to $15,000.00. But upon cross-examination the witnesses show that they have practically no substantial basis for the estimates which they give. As an illustration, one of the witnesses, after testifying in

chief in the manner stated, was asked upon cross-examination: "Q. Mr. Williamson, in fixing that difference in the value, what do you take into consideration? A. I take in consideration the removing of that place, that opens up the whole way of that farm and gives a man an outlet." So that this witness, if he were correct in his estimate, based it upon premises which are not in the case, for the stone was agreed to be removed by the defendant not for the purpose of giving plaintiffs an outlet, but for building purposes only. Another one of plaintiffs' witnesses was asked on cross-examination: "Q. Mr. Hopkins, on what do you base that damage at $10,000.00? A. Well, I think the farm would be worth that much more if it were out." Further along in his cross-examination, after being pressed for a more substantial reason, this witness says: "Well, one reason would be that it would give better view, would have a nicer appearance, and another reason there would be room for building several houses, and as I estimate it, it is a lifetime matter there with him and his family and that would possibly mean for nearly a generation, and be obstructed there in the way it is and deprived of the building of houses there that could be built there, the rent that would accrue during a lifetime is worth a great deal of money."

It will be observed that this witness, in his answer just referred to, includes many elements of damage not authorized under the former opinions in this case, and assumes an erroneous basis for estimating the damage to plaintiffs' farm by the failure of defendant to remove the stone from the lot in question so as to make it suitable for the erection of a building.

The plaintiff, Hughes, on being asked concerning the extent of the damages to which he was entitled, said: "Well, if I wanted to sell it (the farm) I believe it would be a damage of $10,000.00." Q. "Do you think that $10,000.00 would represent the difference in the two values?" (Objected to and overruled.) A. "I do." Q. "What I mean to ask you is this, so we can be clear about it; take one value of what it would be worth if the earth and stone had been removed according to contract, and the other value if it is left?" A. "It would be worth $10,000.00." Aside from this somewhat questionable manner of eliciting this information from the witness,

he gives no basis for his estimate, neither is he by any means definite or certain as to the uses which he expected to make of the lot had the earth and stone been removed. Other witnesses testifying for plaintiffs are equally if not more indefinite and unconvincing when giving their reasons for fixing the damages at the sums given. Some of them say that it would give plaintiffs a beautiful view, and his farm would be enhanced in value, while others place their estimate upon the fact that plaintiffs would have a better view, as well as a better outlet. These unsubstantial reasons, according to our minds, greatly weaken the testimony of plaintiffs' witnesses, and renders it largely unsatisfactory and by no means convincing.

Defendant introduced nine witnesses, most of whom were farmers owning adjoining land to that of plaintiffs, and they showed themselves competent to testify as to the value of plaintiffs' farm both before and after the removal of the stone and earth in question. None of them fix the damages at a greater sum than $500.00, and this was the estimate, also, of the witness, Mitchell, who was introduced by plaintiff. This makes ten witnesses who based their estimates of the damages upon reasons which at once address themselves as being logical and true, and some of them testified that there were other available building sites in the immediate vicinity, either adjoining or nearly adjoining the premises in question, and that they could be obtained at such reasonable prices as to demonstrate the plaintiffs' damages to his entire farm could not exceed $500.00.

We are aware that this court in a number of cases has in substance said that the verdict of a properly instructed jury will not be set aside unless it is flagrantly against the evidence, nor upon the ground that the damages are excessive, unless they are so great as to strike the mind at first blush as having been superinduced by passion or prejudice. But when conditions exist authorizing the court to interfere because the verdict is flagrantly against the evidence, and the damages assessed are excessive, it not only has a right to, but it is its duty to see that justice is administered by setting the verdict aside. In this case were we confined alone to the estimates fixed by the witnesses for both parties, viewed in the light of the facts given by them as a basis for their

estimates, we would be compelled to say that the verdict assessing the amount of damages was palpably against the evidence and excessive. But when we take into consideration the facts and circumstances forming the actual conditions, there can be no doubt about the matter.

Plaintiffs in 1910, just three years before their cause of action accrued, purchased their farm of .200 acres for $3,100.00. Two years afterward they sold to the defendant a strip of ground through their farm, containing about 3 2-3 acres, for $1,000.00, leaving them about 196 acres, which cost them $2,100.00. Their farm is located some twelve miles from a town of any size, although there is a mining camp and a small village upon the adjoining land. Only 37-100 of an acre is here involved, and it is inconceivable that plaintiffs could possibly be damaged in the very considerable sum of $8,000.00 because of the violations complained of. While this court is compelled, and it is its duty to give credence to the testimony offered by both parties to a suit, yet this does not mean that the court must believe the incredible, and accept as true testimony that is entirely out of harmony with observation and experience.

In the case of Big Sandy Railway Company v. Dills, 120 Ky., 563, this court had under consideration a question very similar to the instant one. It was a proceeding brought to condemn through defendant's farm a right of way for the construction of a railroad, including only 2 and 71-100 acres. The jury returned a verdict in favor of the defendants for $8,800.00. Witnesses in that case, as in this, fixed the damages as high and higher than the verdict, while others testifying on behalf of the railroad company fixed them at a much lower sum. This court, however, in its opinion, in disposing of the complaint that the verdict was excessive, said:

"The case was left to the jury largely upon the mere opinions of the witnesses, without a statement of the facts on which the opinions were based, and this may account for the verdict. We know judicially that Pikeville is a town of the sixth class, and it is hard for us to understand why 2 71-100 acres of land a quarter of a mile beyond the town boundary is worth anything like $8,000.00. The facts in the record do not show any substantial damage to the remainder of the tract, except

that a road will have to be opened on the tract along the railroad.''

In that case the landowner was being permanently deprived of 2 71-100 acres of his land, the market value of which he was entitled to recover, plus damage to the remainder of his tract, and the costs of increased fencing made necessary by appropriating for a right of way the land condemned. The land was near Pikeville and suitable, as well as available, according to the proof, for town lots which could be sold for fair prices. If under those conditions $8,000.00 was excessive, as this court adjudged, doubly so would be the verdict before us, where plaintiffs' land is located far away from any city or prosperous town, and only 37-100 of an acre directly involved, and then only to the extent of altering its condition, leaving plaintiffs still the owners of it.

As in that case, so in this, the witnesses in behalf of plaintiffs give merely their opinions without a substantial statement of facts on which such opinions are based, and we know from observation and experience that the verdict of $8,000.00 is entirely out of reason. See, also, Clay-Meek Paper Box Company v. McNally, 138 Ky. 823, and L. & N. Railroad Co. v. Reaume, 128 Ky. 107. We are aware that, as stated in the McNally case just referred to, ''The power confided to the Court of Appeals of setting aside verdicts as excessive should be sparingly used.'' Still, as stated in the Reaume case, ''Where it appears at first blush that the damages awarded by the jury are excessive, it is the duty of the court to grant a new trial.''

In determining whether the verdict is flagrantly against the evidence, we are not confined alone to the express testimony of the witnesses, but may look to the surrounding circumstances and conditions, and if they are such that the facts testified to by the witnesses can not upon any reasonable hypothesis be true, the verdict should be set aside.

Wherefore, the judgment is reversed, with directions to proceed in accordance with this opinion.