**COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,**

v.

**Jimmie P. EVANS, Appellee.**

Court of Appeals of Kentucky.

May 4, 1962.

Rehearing Denied Dec. 7, 1962.

John Breckinridge, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., Lawrence L. Pedley, Dept. of Highways, Frankfort, for appellant.

William C. Clay, Jr., Mt. Sterling, for appellee.

PALMORE, Judge.

The state, through its Department of Highways, appeals from a judgment of the Montgomery Circuit Court entered pursuant to a jury verdict awarding Jimmie P. Evans $62,454 for land taken and damages resulting from the condemnation of 26.82 acres of the Evans farm incident to the construction of Interstate Highway No. 64 (I–64). It appeals also from a supplemental judgment of the circuit court requiring it to bear the cost of relocating a private gas connection.

Immediately prior to the taking the farm in question was a 433-acre tract fronting 2893 feet on the west side of U. S. Highway 460 one mile north of Mt. Sterling, the county seat of Montgomery County. It extended westwardly to a depth of about 1½ miles from U. S. 460 and was bordered on the south by an intersecting county road called the Country Club road. Since easy access from U. S. 460 to the rear or westward reaches of the property was afforded via this county road it had never been necessary that the owner construct an east-west passway within the farm itself.

I–64 is a limited access highway. It enters the Evans place from the south, closing off the Country Club road about half a mile west of U. S. 460, and runs northeastwardly to U. S. 460, severing a 32-acre triangle in the southeast corner from the rest of the farm. The right-of-way of I–64 is 300 feet wide until it approaches within 1100 feet of U. S. 460, and over this distance of 1100 feet it flares outward, so

as to accommodate interchange ramps, to a width of approximately 925 feet at its intersection with U. S. 460. In addition to this right-of-way, which embraces 24.94 acres, the condemnation also included a strip 859 feet long and 55 feet wide bordering the west side of U. S. 460 to the north of the ramp area and a similar strip 738 feet long and 50 feet wide bordering the same side of U. S. 460 to the south of the ramp area. These strips, aggregating 1.88 acres, were taken for the purpose of 4-laning U. S. 460 on each side of the intersection, and although the landowner has taken the position throughout this litigation that by virtue of acquiring corporeal title rather than a highway easement the state may at any time shut off his access to U. S. 460 along these strips, the judgment of the county court specifically provides that he shall have such access. (Hence we need not consider whether the character of title acquired by the state has, of itself, anything to do with the right of access.) Thus his frontage on U. S. 460 has been reduced by 925 feet, that being the width of the I–64 right-of-way and ramp area, and not by the additional 1597 feet taken for the widening of U. S. 460. There is, however, the likelihood of some limitation of access in that the plans for 4-laning U. S. 460 contemplate a median strip, which may or may not be broken for cross-over at such point or points as the owner may desire.

The county court judgment made an award of $55,215 and directed the condemnor to make "the necessary arrangements for the continuation of the water and gas utility service to this farm." The report of commissioners is not before us, but the documents in the record reveal that it awarded $25,815 for the 26.82 acres taken and $29,400 for damages to the remainder. Both parties appealed to the circuit court.

Prior to the eventual trial of the case, and in response to a motion by the landowner showing that his gas utility service had been disrupted, the circuit court entered an order directing the condemnor to make necessary arrangements for the continuance of

this service and reserving "the right to modify the judgment of the Montgomery County Court in this and in all other respects upon the trial of this action in the Montgomery Circuit Court." During the trial there was no reference to utility services, but thereafter a supplemental judgment was entered showing that counsel for the respective parties had argued the matter before the court and directing the condemnor, in effect, to install a connection between the gas line built by it under I–64 and the service line entering the owner's premises.

Witnesses for the state appraised the 26.82 acres taken at a value of $17,928. The owner's evidence on this item ranged from $62,142 to $62,465. None of the witnesses on either side figured any damages to the remainder of the farm by reason of the taking except necessary refencing and the construction of a ¾-mile rock roadway for access to the back portion of the farm. The state experts estimated $780 for 130 rods of fence and $7,500 for the road. The landowner's evidence included estimates of $600 to $1,200 for fencing and $7,500 to $8,000 for the road. The jury awarded $54,204 for land taken and $8,250 for "other damages."

■ The record before us divulges very little with respect to the disputed gas connection. Apparently, however, it was located within the right-of-way of U.S. 460, and no determination was made until after the trial as to whether it existed there by sufferance of the state or by virtue of an implied easement or other right retained by the landowner's predecessor in title when he conveyed that particular right-of-way to the state. Appellee, in defending the supplemental judgment, points to the rule that if some of the proceedings are not reflected in the record this court "will indulge the presumption that the absent evidence supported the facts pleaded and the decision of the trial court thereon." Willis v. Davis, Ky., 1959, 323 S.W.2d 847. This is but another way of saying that when the evidence

is not before us we can do no more than determine whether the pleadings support the judgment. Marcum v. Brock, Ky., 1953, 257 S.W.2d 55. In this case there is nothing in the record, by pleading, evidence, or otherwise, to support the supplemental judgment. Moreover, the only relief the court was authorized to give was compensation in money, and that was exclusively a jury question. KRS 177.087.

■ If in disrupting the gas connection the state infringed a property right of the condemnee, the resulting damage should have been considered in exactly the same manner as other damages to the remainder, such as the necessary cost of fencing. Cf. Commonwealth Dept. of Highways v. Farris, Ky., 1961, 351 S.W.2d 526, 528; Greenup County v. Redmond, Ky., 1960, 335 S.W.2d 335; Commonwealth v. Conatser, Ky., 1959, 329 S.W.2d 48, 50. It was not proper for the trial court to reserve the question from the jury.

In its appeal to the circuit court the state excepted "to the award of the commissioners for land taken and damages to the remainder on the grounds that the award is excessive." The owner contends that this language was insufficient to embrace that portion of the county court judgment requiring the state to provide for a continuation of the utility services. Under KRS 177.083 and KRS 177.086 the authority of the county court is limited to determining the petitioner's right to condemn and awarding the owner the value of the property taken and any damages resulting to his adjacent lands. There is no provision for equitable relief in such a proceeding. But if we should assume that the particular type of relief granted by this direction of the county court judgment were properly within the scope of the statutes, as "damages resulting to the adjacent lands of the owner," then necessarily it would fall also within the state's exception to the award for "damages to the remainder."

We hold, therefore, that the controversy with respect to the utility service was essen-

tially a question of damages and was included in the state's appeal to the Montgomery Circuit Court.

■ The next assignment of error is that the trial court declined to instruct the jury to set off benefits against the damages to the remaining portions of the Evans farm. See KRS 177.083. Though no specific grounds for objection to the instructions given by the court were stated, the condemnor's rights in this respect were preserved by tender of instructions clearly setting forth its theory on the point in question. See Commonwealth Dept. of Highways v. Farris, Ky., 1961, 351 S.W.2d 526, 528. The obvious answer to this contention is that since the court had refused to permit any of the evidence offered by the state to show that the value of the remaining property would be enhanced by the construction and prudent maintenance of the project, there was no testimony to support any mention of the matter, one way or the other, in the instructions. The argument therefore addresses itself to the rejection of the proffered testimony instead of the instructions, but in view of the possible retrial of the case we shall consider it anyway.

The rule in this state has been given as follows: "It was first held in Kentucky that benefits could not be set off from the value of the land taken, but might be from the damages to the remaining land. Subsequently it was decided that both the value of the land taken and the direct damages to the remaining land must be paid for in full, without allowance for benefits, but that benefits, both general and special, might be set off against damages for consequential injury and inconvenience." 3 Nichols on Eminent Domain, Sec. 8.6211 [18].

■ "It is difficult to define every character of damage that is direct * * *." Asher v. Louisville & N. R. Co., 1888, 87 Ky. 391, 8 S.W. 854, 10 KLR 185. However, it has been definitely settled that the cost of additional fencing made necessary by the taking "is to be included as part of the direct damages, which cannot be abated by any benefits arising from the building of the road." Big Sandy Ry. Co. v. Dils, 1905, 120 Ky. 563, 87 S.W. 310, 27 KLR 952; Louisville, St. L. & T. R. Co. v. Barrett, 1891, 91 Ky. 487, 16 S.W. 278, 13 KLR 57; Crittenden County v. Towery, 1936, 264 Ky. 606, 95 S.W.2d 233. In Louisville & N. R. Co. v. Hall, 1911, 143 Ky. 497, 136 S.W. 905, the same principle was applied to "such improvements * * * as may be necessary to establish new means of ingress and egress to and from the buildings on the land * * * or may otherwise be necessary for the reasonable enjoyment of defendant's premises."

Though it is no longer proper for the instructions to permit separate assessment of these "direct damages" to the remainder, except for fencing, (see Commonwealth Dept. of Highway v. Farris, Ky., 1961, 351 S.W.2d 526) we see no reason to question Louisville & N. R. Co. v. Hall, 1911, 143 Ky. 497, 136 S.W. 905, as good authority for the proposition that the cost of a roadway "necessary to the reasonable enjoyment of defendant's premises" is an item of direct damage.

■ The state's witnesses conceded the reasonable necessity of the roadway by treating its cost as the principal element in estimating damages to the remainder of the Evans property. Neither side sought to prove that the remainder was damaged in any way except for the necessity of this roadway and new fencing. Thus under the decisions above cited there were no incidental damages against which benefits could have been allowed.

■ The state complains that counsel for the landowner was permitted to cross-examine one of its witnesses with respect to prices paid other property owners for rights of way. Had this occurred it would have been improper and prejudicial. Commonwealth, by State Highway Comm. v. Crutchfield, 1935, 261 Ky. 272, 87 S.W.2d 598. See

also Stewart v. Commonwealth, Ky., 1960, 337 S.W.2d 880, 882. However, the fact is that it did not happen. The questions were directed not to sale prices, but to appraisals the witness had made of other property in the area. Without a showing that the other places mentioned by counsel in his cross-examination were comparable with the Evans property the questions were incompetent, but by the same token the answers elicited did not have enough meaning or significance to be prejudicial. On another trial this type of interrogation should not be permitted unless a foundation has been laid for comparison of the different tracts appraised.

■ One of the valuation witnesses used by the landowner at the trial testified that he had acted as a commissioner in the county court proceeding. He did not, however, indicate the amount of the county court award. In fact, the transcript of his testimony leaves the impression that the appraisal given by him in circuit court was formulated subsequent to his services in the county court. A witness may testify "that he acted as commissioner and as to the character of the inspection that he made of the premises, and then * * * be interrogated as any other witness as to the damage * * *." Webb. v. Kentucky & West Virginia Power Co., 1926, 216 Ky. 64, 287 S.W. 232, 234; Akers v. Kentucky & West Virginia Power Co., 1926, 216 Ky. 326, 287 S.W. 889. We find nothing unusual or improper in the testimony of this witness relating to his services as commissioner. If he gave a higher value at the trial than the award in which he had acquiesced in county court, the state was at liberty to impeach his testimony by inquiring into the amount of the award.

All of the witnesses agreed that the most valuable property taken in this case was that portion of the farm nearest to U. S. 460, which the state appraisers estimated at $1,250, and the landowner at $2,500, per acre. Although each witness ultimately couched his opinion in terms of market value of the whole farm before and after the taking, it is clear that the "after" value was forced by subtracting from the "before" value the figure at which he appraised the 26.82 acres actually taken, together with the amount of direct damages for fencing, etc. We do not question this technique, but mention it in order to point out that since the testimony focused on the value of the 26.82 acres, as such, the manner in which the evaluations were made and conveyed to the jury was of great substantive importance. Now, all of the witnesses agreed that the highest and best use of the land fronting on U. S. 460 was for residential subdivision. The landowner caused a plat to be made and introduced showing how 13.5 acres of the property could have been laid off into 48 building lots. One of his expert witnesses was permitted, over objection, to testify that these lots would be worth $1,000 each and, therefore, that this portion of the land taken was worth $48,000. To this figure he added $9,582 for 1597 feet of road frontage at $6 per foot for the approach strips on U. S. 460, $4,560 for 11.4 acres to the rear of the "subdivided" acreage at $400 per acre, $1,200 for fencing, and $8,000 for a new farm road, thus arriving at a grand total of $71,342.

■ A map or plat may be admitted for the purpose of showing "the susceptibility of the tract of land to platting and its adaptability to residential purposes." Northern Indiana Public Service Co. v. McCoy, 1959, 239 Ind. 301, 157 N.E.2d 181; 5 Nichols on Eminent Domain, Sec. 18.11 [2]. "The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed." 4 Nichols on Eminent Domain, Sec. 12.3142 [1].

The price for which individual lots will sell at retail involves various elements of effort, enterprise and expense. A tract of land that has not been subdivided and made physically ready for sale in lots must be valued at wholesale, as is. It can no more be priced at what it will bring after development than a vacant lot can be valued at what it will bring after a building is erected on it. Certainly a man who intends to subdivide a tract and sell lots at $1,000 each would not pay $1,000 per prospective lot for the whole tract. Hence it was improper and prejudicial for the trial court to permit valuation testimony in this case on a per lot basis. See Northern Indiana Public Service Co. v. McCoy, 1959, 239 Ind. 301, 157 N.E.2d 181; State v. Deal, 1951, 191 Or. 661, 233 P.2d 242. We cannot, of course, assume that the jury was not influenced by it.

In St. Agnes Cemetery v. State, 1957, 3 N.Y.2d 37, 163 N.Y.S.2d 655, 143 N.E.2d 377, 62 A.L.R.2d 1161, cited by the landowner in support of this testimony, the Court of Appeals of New York, in a 4 to 3 decision, approved the valuation of a portion of an existing cemetery on a per lot basis. Though we find ourselves more in accord with the viewpoint expressed in the dissenting opinion, nevertheless the case is distinguishable in that the property already had been acquired by the cemetery company and substantially improved for purposes of resale in the form of lots.

The judgment is reversed with directions that a new trial be granted.