CASE 48—CONDEMNATION OF LAND—APRIL 27.

# Elizabethtown & Paducah Railroad Company v. Helm's heirs.

## APPEAL FROM HARDIN COUNTY COURT.

1. IN CONDEMNATION OF LAND FOR THE USE OF THE ELIZABETHTOWN & PADUCAH RAILROAD COMPANY the rule prescribed by the charter of said company must be held to be subordinate to the protection afforded the citizen by section 14, article 13, constitution of this state. The rule laid down in Sutton's heirs v. City of Louisville (5 Dana, 28) is cited and approved, both as to the value of the property taken and how the advantages and disadvantages are to be compared and set off the one against the other.

2. The owner has the constitutional right to demand the value of the land taken, considering its relation to the land from which it is severed.

    But the right to indemnity for consequential inconvenience or injury, resulting from the use to which the public proposes to devote the land taken, is not a constitutional right, but one existing by virtue of the laws regulating the rights and remedies of the owners of property, and is a legitimate subject of legislative action.

3. AMOUNT OF COMPENSATION TO THE OWNER OF THE LAND TAKEN SHOULD BE ASCERTAINED BY THE APPRAISERS OR JURY IN THE FOLLOWING MANNER, TO WIT:

    *First.*—By ascertaining the value of the entire tract of land, excluding the enhancement resulting from the contemplated improvement; then (still excluding this enhancement) what will be its value after the appropriation of the portion or such estate therein as may be proposed to be taken. The difference in value thus found is the true compensation to which the owner is entitled for the land proposed to be taken.

    While every circumstance injuriously affecting the citizen in the enjoyment of the land not taken, which can be satisfactorily demonstrated to grow out of his being deprived of the use theretofore enjoyed by him of the portion taken, should receive due consideration and be allowed its proper weight, the appraisers or jury should disregard reasons which are merely personal to the owner, not affecting the market value of his remaining lands, and

also such prospective damages as may follow the construction and operation of the proposed railway or other public work.

*Second.—In determining the consequential damages* a survey should be taken of all the advantages and disadvantages which may be reasonably anticipated to result from the prudent construction and operation of the proposed improvement, and if the balance be against the owner of the land, then to the extent that such balance diminishes its market value he should have a judgment on account of incidental damages; otherwise he is entitled to nothing.

4. *Opinions of witnesses,* based upon a mere knowledge of the results generally following the construction and operations of railways, are not competent evidence in a proceeding for the condemnation of land for the use of a railroad.

5. Evidence as to the damages to the owners, in case the land lying south of the present location of the road had been sold, was competent in this case.

6. *For land sold before any steps were taken to condemn* the right of way through such land the vendor is not entitled to recover damages, unless the right to claim such damages was reserved in making the sale and conveyance of the land.

H. C. PINDELL, . . . . . . . . . . For Appellant,

CITED

17 B. Monroe, 173, Henderson & Nashville R. R. Co. v. Dickerson.
1 Bush, 326, Louisville & Nashville R. R. Co. v. Glazebrook.
9 Dana, 115, Jacob v. The City of Louisville.
2 Iowa, 310, Henry v. D. & P. R. R. Co.
5 Dana, 33, Sutton's heirs v. City of Louisville.

C. G. WINTERSMITH, }
JAMES T. HELM, . . } . . . . . . . . For Appellees,

CITED

17 B. Monroe, 173, Henderson & Nashville R. R. Co. v. Dickerson.
1 Acts of 1867–8, page 566.
5 Dana, 28, Sutton's heirs v. City of Louisville.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

The inquiry in this case is, What compensation shall be made to the appellees for land taken for the use of the Elizabethtown & Paducah Railroad Company?

The rule prescribed by the General Assembly, and embodied in the 13th section of the original charter of said

company, is as follows: "In estimating the damages (the jury) shall find for the owner or owners the actual value of the land . . . . proposed to be taken; but in estimating damages resulting incidentally to the other land . . . of such owners, shall offset the advantages to such residue to be derived from the building and operating of said road 'by, through, or near such residue."

This rule must of course be held to be subordinate to the constitutional protection afforded the citizen by the 14th section of the 13th article of our state constitution, which provides, in terms, that "no man's property shall be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him."

It has been uniformly held by this court that this provision of our organic law entitles the citizen to insist on being paid in money the value of the thing taken from him, although he may be incidentally benefited with others in the appropriation of it to public use. He has the right to demand the value of the land taken, considering its relation to the land from which it is severed. (Nashville & Henderson Railroad Company v. Dickerson, 17 B. Monroe, 173; Louisville & Nashville Railroad Company v. Thompson, 18 B. Monroe, 735; Elizabethtown & Paducah Railroad Company v. Kurtz, Ms. Opinion, 1871.) Of this right he can not be deprived by legislative enactment, and no intention to do so is manifested by the charter under which the appellant is proceeding. The right, however, of the citizen to indemnity for consequential inconvenience or injury resulting from the use to which the public proposes to devote the land taken is not a constitutional right, but one existing by virtue of the laws regulating the rights and remedies of the owners of property, and is a legitimate subject of legislative action.

This distinction is recognized and stated with great clear-

ness and precision by Chief Justice Robertson in the case of Sutton's heirs v. The City of Louisville (5 Dana, 28), where this language is used: "The citizen has a right to insist on being paid the value of the thing taken from him, although he may be incidentally benefited with others in the appropriation of it to public use. If, however, claiming more than the value of the property taken, he seek indemnity for consequential inconvenience or injury, then the true question will be whether, upon a survey of all advantages as well as disadvantages which will be likely to result to him, the balance will be for or against him; and if ascertained to be in his favor, then of course he will be entitled to nothing for alleged damages for such inconvenience or injury, because, the whole case being properly considered in all its bearings, he will sustain no damage. Thus, and only thus, advantages and disadvantages may be compared and set off, the one against the other."

The difficulties in this case are found to grow out of the application of these general rules, and in consequence of the failure of the county court to observe the distinction just stated, and in treating as one two questions which we regard as essentially different. To avoid such difficulties it is necessary to ascertain, *first*, the value to the owner of the land proposed to be taken; and *second*, the amount, if any, which the disadvantages and inconveniences will overbalance the advantages to the land not taken, from the use to which the public proposes to devote that which is taken.

The first question can be most readily and fairly determined by ascertaining the value of the entire tract of land, excluding the enhancement resulting from the contemplated improvement; then (still excluding this enhancement) what will be its value after the appropriation of the portion, or of such estate therein as may be proposed to be taken. The difference in value thus found is the true compensation to which the owner is entitled. It is true that in most of the American states

rules different from this have been adopted; and that Mr. Redfield, in his work on Railways (volume 1, section 71), inclines to the conclusion that the proper test is the difference in the value of the whole land without the railway and the portion remaining after the railway is built.

Our objection to this rule is that in some instances the owner would be paid for the land or easement taken in the enhancement to the value of his remaining land, brought about by a public work conferring similar benefits upon the entire local community, and not in money, as we are convinced our state constitution requires.

It should be further considered that so soon as the public secures the right to enter upon and apply to its purposes the land or easement sought to be taken, the appropriation has been practically made so far as the owner is concerned.

The particular facts and circumstances to be considered in adjusting the difference in the value of a tract of land before and after a portion of it has been taken or appropriated to public use can not, from the nature of things, be set out in detail, or defined with any degree of precision. While every circumstance injuriously affecting the citizen in the enjoyment of the land not taken, which can be satisfactorily demonstrated to grow out of his being deprived of the use theretofore enjoyed by him of the portion taken, should receive due consideration and be allowed its proper weight, the appraisers or jury should disregard reasons which are purely personal to the owner, not affecting the market value of his remaining lands, and also such prospective damages as may follow the construction and operation of the proposed railway or other public work.

These prospective damages are to be considered in the determination of the second question, and the rule laid down in the case of Sutton's heirs should be allowed to control in the settlement of that question. Let a survey be taken of

all the advantages and disadvantages which may be reasonably anticipated to result from the prudent construction and operation of the proposed railway, and if the balance be against the owner of the land, then to the extent that such balance diminishes its market value he should have a judgment on account of incidental damages; otherwise of course he is entitled to nothing. The instructions given the jury upon the trial of this cause are inconsistent with this view of the law, and consequently must be deemed erroneous.

The court did not err in excluding the depositions of Pickett and Paine, and portions of those of McLeod and Lennot. While in cases like this matters of opinion founded upon experience or observation can not be wholly excluded from the jury, the witness who gives such opinions should be acquainted with the peculiar facts and circumstances attending the case on trial, and the opinions should, as far as possible, be based upon those facts, and not upon a mere knowledge of the results generally following the construction and operations of railways.

The witness Bryan should have been allowed to testify as to the damages to appellees in case the land lying south of the present location of the road had been sold.

It was erroneous to allow the appellees the damages assessed on account of the land sold to Miller. This sale was made before any steps had been taken to condemn the right of way through such land, and at a time when the Helms could not have certainly known that such condemnation would ever be made. The deed to Miller passed the entire estate in the land conveyed. No right to claim damages against the appellants, in the event the then location of the road should be finally adopted and the necessary legal steps taken to secure the right of way, was reserved.

The judgment is reversed, and the cause remanded for a new trial upon principles consistent with this opinion.