CASE 89.—PROCEEDINGS BY CHARLES A. SMITH AND OTH-
ERS AGAINST THE BROADWAY COAL MINING
COMPANY AND ANOTHER TO OPEN A PUBLIC
HIGHWAY.—February 16, 1910.

## Broadway Coal Mining Co., &c. v. Smith, &c.

Appeal from Ohio Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

From the judgment opening the road and awarding damages, defendants appeal.—Reversed.

1. Highways—Proceedings to Establish—Estoppel to Appeal.—
If a county court had no power to set aside a judgment dismissing the petition in proceedings to open a highway and grant a new trial, its action in doing so was void, and petitioners were not estopped by their motion for new trial from ignoring the judgment on retrial and appealing from the judgment of dismissal; but, if it had power to grant the new trial, petitioners could not appeal from the judgment of dismissal.

2. Highways—Proceedings for Establishment—Dismissal—Granting New Trial—Time of Application.—Ky. Stat., section 4303, provides for appeal from the county court to the circuit court in proceedings to open a highway, but does not provide for granting new trials in the county court. Civ. Code

Prac., section 700, provides that the provisions of the Code shall regulate the proceedings in civil actions in county courts, quarterly courts, justices' courts, etc., except as otherwise provided, and section 714 provides for granting new trials in quarterly courts and justices' courts, but does not expressly authorize new trials in county courts. Held, that the granting of a new trial by the county court in proceedings to open a highway after denial of the petition and dismissal of the proceedings was controlled by Civil Code Prac., section 340, subdivision 4, relating to new trials generally, and requiring application therefor to be made within three days after the decision is rendered, and, where the motion for new trial was not made within that time, the court had no power to grant it; the only remedy of the aggrieved party being by appeal under section 4303.

3. Eminent Domain—Compensation—Amount—Deduction of Benefits—Opening Highway.—Constitution, section 13, prohibits any person's property from being taken or applied to a public use without the consent of his representatives, and without just compensation previously made, and section 242 requires corporations and persons empowered to take private property for public use to make just compensation for property taken or injured, which shall be paid, or secured before the taking. Held, that an owner was entitled to be compensated in money for the actual damage sustained by the taking or injuring of property for public use, and the consequential benefits accruing to land not taken cannot be set off against such damages, so that Ky. Stat., section 4292, requiring the commissioners to assess as damages for opening a highway a just compensation for the land taken, necessary additional fencing by the owner, and damage to the remainder of the land "beyond the consequential benefits" thereto from the road, is unconstitutional insofar as it requires consequential benefits to be set off against damages.

4. Eminent Domain—Compensation—Measure.—The measure of compensation for land taken for public use should be the same without reference to the purpose for which the property is taken.

5. Eminent Domain—Compensation—Measure—Taking Land for Highway.—The owner of land taken for highway purposes is entitled to such sum as will be just compensation for the part of the land taken, considered in its relation to the entire tract, including any additional fencing necessary, and

for such direct damages as result to the remainder of the tract because of its condition or situation by reason of the taking of a part thereof, not to exceed in all the difference between the actual value of the entire tract immediately before and the actual value of the remainder immediately after, the taking, excluding any benefits to the land not taken resulting from the opening or use of the highway.

6. Eminent Domain—Speculative Damages—Instructions.— Where consequential or prospective damages or benefits to the land not taken for a highway would be too speculative to be estimated with reasonable certainty, so that the submission of the question would only mislead the jury, an instruction thereon should not be given, even if such damages could otherwise be considered.

7. Highways—Opening—Costs.—Under Ky. Stat., section 4299, permitting the county court to open a road on condition that all or a part of the sum required to be paid to the owner and the cost of procedure be paid by the applicants, and providing that, if the court thinks such sum and the cost of proceedings shall be paid by the county, it shall order the same to be paid to the person entitled, the owner cannot be charged with costs in the county court, though he files exceptions therein and demands a jury trial, but if he appeals to the circuit court, whether from a judgment upon a verdict, or a commissioner's report, he must pay the costs therein unless he recovers larger damages than were awarded him in the county court, in which case costs in both courts must be paid as provided by the statute.

GLENN & SIMMERMAN for appellants.

JOHN B. WILSON and HEAVRIN & WOODWARD for appellees.

OPINION OF THE COURT BY JUDGE CARROLL —Reversing.

This appeal is prosecuted from a judgment of the Ohio circuit court ordering a public road to be opened over the land of appellants and others. The proceedings to open the road were instituted in the Ohio county court, and upon exceptions to the commissioners' report a verdict was returned to the effect

that the road was not necessary, and thereupon the court entered a judgment dismissing the petition, and awarding the landowners, among whom were the appellants, their costs against the petitioners, who are the appellees herein. After this the petitioners filed grounds and moved the county court to set aside the verdict and judgment and grant a new trial, and this the county court did. Upon a retrial in the county court, a verdict was returned in favor of the establishment of the road, and the court entered judgment in accordance with it. Thereafter the petitioners reached the conclusion that the court had no power to set aside the first verdict and judgment refusing to open the road, and so they ignored the second judgment of the county court ordering the road to be opened, and prosecuted an appeal to the circuit court from the judgment of the county court refusing to open the road. Upon a trial in the circuit court the jury returned a verdict assessing damages in favor of the appellant Broadway Coal Mining Company at $50 for land taken and $60 additional for fencing, and in favor of the appellant J. L. Southard for $50 for land taken and $50 for additional fencing. Thereupon a judgment was entered directing the payment of the damages and ordering the road to be opened along the line reported by the commissioners; and it was further adjudged that the petitioners recover of the Broadway Coal Mining Company and Southard their costs expended in the circuit court and also in the county court.

The appellants ask that this judgment be reversed and set aside, first, because the petitioning appellees were estopped to appeal from a judgment of the county court that they had procured to be set aside; second, because the court erred in the instructions

defining the damages to which the landowners were entitled; third, because the amount awarded for damages is inadequate; and, fourth, because the court entered a judgment against the landowners for the costs in the county court as well as in the circuit court.

The first question to be determined is whether or not the action of the county court in granting a new trial setting aside the first judgment again hearing the case and entering a new judgment was void. If it was, these various orders might properly have been ignored and an appeal taken to the circuit court from the judgment of the county court dismissing the proceeding. On the other hand, if the county court had the power to set aside the first judgment and grant a new trial, it follows as a matter of course that the second judgment in the county court is a valid judgment, giving to the petitioners all the relief they sought, and, further, that no appeal could be prosecuted to the circuit court from a judgment of the county court that on motion of the appellants in the circuit court had been set aside in the county court. There is no provision in the statute authorizing new trials in the county court in road cases, but section 4303 of the Kentucky Statutes (Russell's Stat. Sec. 5435) provides for an appeal to the circuit court·from the decision of the county court. We do not think, however, that the failure of the statute to authorize a new trial or the fact that it does make provision for an appeal takes from the county court the right to grant a new trial in a road case if the application therefor is made in due time. Section 700 of the Civil Code of Practice provides that: ''The provisions of this Code shall regulate the proceedings in civil actions in quarterly courts,

county courts, police courts, city courts, mayor's courts, and courts of justices of the peace, except as is provided in this chapter.'' In section 714 of the Civil Code of Practice provision is made for the granting of new trials in quarterly courts and courts of justices of the peace upon motion made within 10 days after a judgment has been rendered, but there is no express or distinct provision authorizing the granting of new trials in county courts. This being so, we think that new trials in the county court are governed by section 340, subd. 4, Civ. Code Prac. Under these sections, an application for new trial must be made at the term at which the decision was rendered, and, except for certain causes not necessary here to mention, be made within three days after the decision is rendered. And so, if the application for a new trial in a road case is not made within this time, the court loses jurisdiction of the case, and the only remedy of the complaining party is by appeal to the circuit court in the manner provided in section 4303 of the Kentucky Statutes. The motion for a new trial in this case was not made within three days, and so the action of the court in setting aside its judgment, as well as its subsequent proceedings after the judgment had been set aside, were void and properly ignored. It follows from this that, as the appeal was prosecuted to the circuit court in proper time, it had jurisdiction to try the case.

The court instructed the jury as follows: ''The jury will find from the evidence and state in their verdict whether or not the road described in the commissioners' report herein and shown on the plat produced in the evidence is necessary and will be for the convenience of the traveling public to en-

able them to reach either an established town, post-office, or house of worship; and, if they find from the evidence that said road will be a public conven-ience for travel and is necessary, they will find and assess the just compensation to the Broadway Coal Company and Jack Southard for their land proposed to be taken for said public road, and any additional fencing which will be thereby rendered necessary, and the value of such fencing, and the damages, if any to the residue of their respective tracts beyond the consequential benefits which will be derived by each of them by the making of the public road; and they will find the damages if any that the Broadway Coal Company and Jack Southard will sustain sepa-rately.'' The objection urged to this instruction is that it allowed the jury to set off against the damages to the land not actually taken for the road the con-sequential benefits which would be derived by the land owners from the opening and use of the road. To put it in another way, if the jury believe from the evidence that the land of the appellants, other than that actually taken by the road, would be damaged by its establishment, they could set off against such damage the benefits that the road might be to the land owners. It is insisted by counsel for the owners that they were entitled to recover the full amount of damages they suffered by the opening of the road, and that this damage included, not only the value of the land taken and the fencing made necessary by the opening of the road, but the injury that would result to the remainder of their land by the opening of the road, and that no part of this damage could be offset by any benefits they might derive from its opening. This contention presents an important question, and one that so far as we are advised has not hereto-

fore been adjudicated in a case involving the opening of a public road.  Section 4292, Ky. Stat., makes provision for the compensation that shall be allowed to land owners in cases like this; and reads: "* * *' Said commissioners shall determine and assess what will be a just compensation to each owner and tenant, if any, for the land proposed to be taken, and the additional fencing which will be thereby rendered necessary, and the value thereof, and the damage, if any, to the residue of the tracts beyond the consequential benefits which will be derived to such residue from the road * * *''  Under this section it will be observed that if the land of the owner, other than that actually taken for the road, is damaged by the taking of so much as may be necessary for the road, he can only recover for such damage the excess, if any, over the benefit that the road will be to the remainder of his land.  If the landowner should be able to show that the remainder of his land would be damaged say $500 by the road, and the persons desiring to open the road should be able to establish that the remainder of his land would be benefited to the amount of $500, he would not be entitled to recover any damages on this account.  It will further be observed that the damage, 'as well as the benefit, is a question of fact to be determined by the jury to whom the case is submitted if exceptions are filed to the report of the commissioners. The instruction supra followed the statute, and so, if the statute is valid, and fixes in conformity to the Constitution the measure of damage the land owner is entitled to recover, the instruction is correct.  It will thus be seen that the question presented is:  Does the statute fix the measure of damages in conformity with the Constitution?

In the consideration of this question a brief review of the condition of the law prior to the adoption of the present Constitution will be instructive and helpful. In the three former Constitutions of the state, there was the following section: "No person shall, for the same offense, be twice put in jeopardy of his life or limb, nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him." Section 13 of the present Constitution is in identically the same language. Previous to the adoption of the present Constitution, this provision had been often and uniformly construed, and we may assume that its meaning was well understood. In the early case of Suttons' Heirs v. Louisville, 5 Dana 28, the statute then in force fixing the damages that the owner might recover when it was proposed to take his land for public use provided that the benefits might be set off against the damages. In holding that direct damages could not be diminished by probable benefits, Chief Justice Robertson, speaking for the court, said: "The object of so much of the twelfth section of the tenth article of the Constitution (same as section 13 of the present Constitution) was to secure the citizen from the capricious abuse of the sovereign right of eminent domain. That object would not be attained if the government or persons identified with it, and representing its authority and interests could take the property of a citizen, and apply it to public use, without any other compensation than an ideal advantage, which, in the opinion of the party acting, would arise to the owner from the effectuation of the object for which the appropriation is made. The public ought not to decide for any citizen how far, or

whether at all, he will be peculiarly benefited by a
public work or other thing for which his property is
taken without his consent. If such an arbitrary and
discretionary power can be exercised in such a case,
the constitutional guarantee would be of little or no
value, for it would be easy to suppose cases in which
even a jury would decide that the construction of
a road, or the opening or improving of a street, or
canal, near or through the land of another, would
incidentally benefit the owner by its resulting facili-
ties to him, or by a consequential enhancement of
the estimated value of his property, when, in his
own opinion, or even in fact, considering the use he
makes and intends to make of it, such an improve-
ment, with such a locality, would be inconvenient to
him, and injurious to his interests. * * * Hence, when
the property of one citizen is taken without his con-
sent, for the use of the whole community of which he
is a member, the Constitution imperiously requires,
not that the public shall decide whether he is entitled
to any compensation, but that a just compensation
shall be paid or secured, and that compensation im-
plies the value, at least, of the thing taken. No
citizen can be compelled to give his land to the public
without an equivalent. What is that equivalent but
the value, in money, of the land surrendered to the
public use? * * * For property taken for public use
without the owner's consent the Constitution entitles
him to be paid in money the actual value of the prop-
erty, and the actual or supposed advantage to him
of the appropriation cannot be set off against that
value.''

In Henderson & Nashville R. Co. v. Dickerson, 17
B. Mon. 173, 66 Am. Dec. 148, the statute under
which the condemnation proceedings were instituted

reads: ''The commissioners in making the valuation, shall take into consideration the loss or damage which shall accrue to the owner or owners, in consequence of the land or right of way being taken or surrendered, and also the benefit or advantage that the owner or owners may receive from the construction or establishment of the railroad, or any branch of it, or its works; and shall particularly state the nature and value or amount of each; and the excess of the loss or damage, over and above the benefit and advantage to the owner or owners shall form the measure of valuation of the said land or right of way.'' In the course of the opinion the court, after approving the principle laid down in the case of Suttons' heirs said: ''But so far as the foregoing provision tends to defeat or render nugatory the clause in the Constitution which secures to the owner a just compensation for any of his property that may be taken for public use, which compensation must be made in its actual value in money and not in benefits and advantages which may be derived from the construction or establishment of the railroad, it is wholly inoperative, and must be disregarded.'' In Elizabethtown & Paducah R. Co. v. Helm, 8 Bush 681, the measure of damage the owner was entitled to and against which no benefits or advantages could be offset was arrived at ''by ascertaining the value of the entire tract of land excluding the enhancement resulting from the contemplated improvement; then, still excluding this enhancement, what will be its value after the appropriation of the portion proposed to be taken. The difference in value thus found is the true compensation to which the owner is entitled.'' It was further said that, if the owner in addition to the actual damage sustained seeks indemnity for conse-

quential inconvenience or injury, these prospective damages are to be considered by taking a survey of all the advantages and benefits which may be reasonably anticipated to result from the prudent construction and operation of the proposed railway, and, if the balance be against the owner of the land, then to the extent that such balance diminishes its market value he should have a judgment on account of his incidental damages; otherwise, he is entitled to nothing.    And this rule was followed in Asher v. L. & N. R. Co., 87 Ky. 391, 8 S. W. 854, 10 Ky. Law Rep. 185; L. & N. R. Co. v. Ingram, 14 S. W. 534, 12 Ky. Law Rep. 456; West Virginia R. Co. v. Gibson, 94 Ky. 234, 21 S. W. 1055, 15 Ky. Law Rep. 7.

It will thus be seen that it was the well settled law before the present Constitution that benefits and advantages could not be offset against the compensation to which the owner was entitled for the property taken, but that such advantages might be set off against consequential inconvenience or injury; and that the word "taken" was construed to embrace the injury to the residue of the tract as well as that actually taken.

But, in addition to section 13, there was embodied in the present Constitution section 242, which reads, in part, that: "Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction. * * *" This section is more comprehensive than section 13, as in addition to providing that the owner shall be compensated for property

taken it also declares that he shall be compensated for property injured or destroyed.    So that, under the present Constitution, there cannot be any doubt that the owner is as much entitled to compensation for property injured or destroyed as he is to compensation for that actually taken.    Nor can it be doubted that the words "injured or destroyed" were used advisedly and for the purpose of affording the owner full indemnity for the loss suffered by him. While this constitutional provision does not materially depart from the construction given by this court to the like provision in former Constitutions, it is manifest that it was placed in the organic law for the purpose of making safe and plain the measure of damage the owner should be entitled to.    If the owner could only recover compensation for the value of the property actually taken and proposed to be occupied by the public improvement, in many instances it would fall far short of just compensation. It might often happen that the value of the land actually, taken would be small in comparison with the direct injury to the remainder of his property.    The land, a part of which it was proposed to take, might be so situated or surrounded as that the taking of a narrow strip or small parcel would greatly diminish or virtually destroy the value of the remainder of the tract.    To illustrate, a tract of land might be worth $1,000, and valued in proportion to the whole the part actually taken might not be worth $50, and yet the taking and occupancy of this part might injure the market value of the remainder of the tract $500. It was to protect the owner from conditions like this that provision was made to compensate him for the injury to his property as well as the taking of it.    If

vol. 136—47

it were allowable to set off benefits, the result would
be that in many cases the landowner would not re-
ceive adequate or perhaps any compensation for his
property injured or destroyed. The jury or court
trying the case might be of the opinion that the bene-
fits equaled the damage to the remainder of the tract
other than that actually taken, and so the provision
of the Constitution intended to protect the property
of the individual and secure to him just compensa-
tion for the loss sustained would fail to accomplish
its purpose.

The language of section 242 embraces the taking or
injury of private property for public use by any cor-
poration or person. In short, whenever a person or
corporation—municipal or otherwise— is invested
with authority to take the property of the individual
for a public use, the compensation to which the indi-
vidual is entitled must be measured by the same
standard and in conformity with this section. It
makes no provision for setting off the benefits or
advantages that the owner may derive from the con-
templated improvement against the compensation to
which he is entitled for the property taken, injured,
or destroyed by the improvement. The owner is en-
titled as a matter of right to compensation for the
direct and actual damage or loss sustained by reason
of the taking or injury to his property, and this com-
pensation—which must be paid in money—cannot
be diminished by evidence of benefits that may accrue
to him as a consequence of the improvement. If the
prospective benefits or advantages could be set off
against the property injured or destroyed by the im-
provement, there is no reason why such benefits or
advantages might not be set off against that actually
taken. As the owner is entitled to compensation in

money for his property actually taken, so is he entitled to compensation in money for that injured or destroyed. As the owner cannot be paid in benefits or advantages for the property actually taken, neither can he be so paid for the property injured or destroyed by the taking. That this is the meaning of section 242 of the present Constitution and the proper construction that should be given to it has in effect been announced by this court in more than one case decided since the adoption of the present Constitution. Thus in City of Henderson v. McClain, 102 Ky. 402, 43 S. W. 700, 19 Ky. Law Rep. 1450, 39 L. R. A. 349, the court, after citing sections 13 and 242, said: "The adoption of section 242 in addition to the provisions of section 13 in our view undoubtedly indicated an intention to change the organic law of the state, and to abolish the requirement of direct physical injury to the property in order to establish a claim for damages." In City of Paducah v. Allen, 111 Ky. 361, 63 S. W. 981, 23 Ky. Law Rep. 701, 98 Am. St. Rep. 422, the court said: "A recovery may be had in cases where private property has sustained a substantial damage by making and using an improvement that is public in its character by the municipality, although the damage shall not be caused by a trespass or an actual physical invasion of the owners' real estate." In Richmond & L. Tp. Co. v. Mason County Fiscal Court, 114 Ky. 351, 70 S. W. 1044, 24 Ky. Law Rep. 1260, it is said: "When private property is taken for public use, the owner must be placed in as good a situation financially as he was before it was taken. Otherwise, to the extent that it is not done, his property has simply been confiscated for the use of the public." In Big Sandy R. Co. v. Dils, 120 Ky. 563, 87 S. W. 310, 27 Ky. Law

Rep. 952, the court said: "The owner is entitled to damages by reason of the depreciation in value of the land on account of the shape in which it may be left or the situation in which it may be placed. Nothing can be deducted from the direct damages which include the value of the strip taken, the depreciation in value of the residue of the tract, and the additional fencing rendered necessary."

So that we have in this state steadfastly adhered both by judicial construction and constitutional enactment to the doctrine that just compensation means compensation in money, and that neither against damages that may be assessed for the land actually taken by the improvement nor against the direct injury to the residue of the tract can any prospective benefits or advantages be set off. In so holding this court has laid down a rule at variance with that prevailing in many jurisdictions, but in our opinion, after a full and careful consideration of the question, it is sound in principle. It is everywhere recognized that the individual cannot be compelled by the exercise of the power of eminent domain to surrender any part of his land, however insignificant or trifling in value it may be, or however much the welfare of the public demands the exaction, unless he receives in return a just compensation. Nor is there any difference of opinion as to what is just compensation when the entire tract or body of land is taken, as all the courts agree that in such a case the owner is entitled to the market or vendible value of his property, and no question of benefits or advantages to him can enter into the case. But, when only a part of his land is taken, there is great diversity of opinion as to what benefits to the residue should be considered in estimating the damage he has sustained by the

taking· of so much as· is necessary for the improvement. Some courts hold in this class of· cases that any enhancement in value of the residue of the tract by reason of the improvement should be set off against any injury to the residue by it. Others hold that only special and distinct benefits that the residue will receive from the improvement can be treated as diminishing the damages to it. In support of these views authorizing benefits to be set off against injury, the courts have advanced various reasons which may be found in Lewis on Eminent Domain, Sec. 671 et seq. But it seems to us that it is unjust to the landowner to attempt to pay him in probable or prospective benefits for an actual injury that he has sustained, and that, when his land is ta·ken or injured, he is entitled without reference to any benefits or advantages the proposed improvement may confer to be compensated in money for the loss he has suffered. We are unable to perceive any sound reason why a person who under authority of law takes the property of another should be permitted to set off against the value of the property taken or the direct damage done to that not taken supposed advantages that the owner may derive from the completion of the improvement. In cases like this the owner does not voluntarily surrender his property. He only parts with it because the mandate of the law compels him to do so. When the law thus takes from him against his will that which he does not desire to part with, reason and justice demand that he should be compensated for the loss sustained, and this compensation he should be paid in money. The person for whose benefit the land is taken should not be allowed to diminish this compensation by evidence of prospective benefits that the proposed improve-

ment will confer upon the owner. The improvement is not made for the benefit of the owner of the land. He may, in fact be strongly opposed to it. In his opinion it may be of no advantage to him, and yet, according to the view of many courts, he must against his consent not only part with his land, but be paid for it in probable benefits. It is, too, a curious fact that many courts, although holding to the view that benefits may be set off against direct injury to the remainder of the tract, refuse to permit these benefits to be set off against the damage caused by the loss of so much of the property as is actually taken for the improvement. Why this distinction should be made is not apparent. When it is conceded that the owner is entitled to compensation for the injury to the residue of his land—and upon this point there is entire unanimity of opinion—why should this injury be diminished by benefits, and yet benefits not be allowed to reduce the damage caused by the loss of the property actually taken? The injury to the owner except in degree is the same in both instances. The part taken is lost to him, and the part remaining has been reduced in value. We therefore submit that there are only two positions that can be logically taken—one is that benefits may be set off against the injury whether it grow out of the loss of the land actually taken or the damage to the residue of the tract, and the other is that benefits should not be permitted in any state of case to diminish the actual loss sustained.

Holding to the last view, we are of the opinion that so much of section 4292 as permits benefits to the residue of the tract to be set off against the direct damage to it is in conflict with the Constitution as heretofore and now construed, and hence the instruc-

tion fixing the measure of damages, although it followed the statute, is incorrect. Under this construction, the same rule will obtain in road cases as has been applied in cases where it was sought to condemn land for railroads and other public improvements. There is no room or reason for any distinction in this particular. The measure or compensation should be the same without reference to the purpose for which the property is taken. On another trial the court in addition to the instruction as to the necessity for the road, should on the question of damages instruct the jury to allow such a sum as will be just compensation to the owners for the land proposed to be taken, considering it in relation to the entire tract, including any additional fencing which will thereby be rendered necessary, and also just compensation for such other direct damages, if any, as result to the remainder of the tract by reason of the situation, condition, or shape in which it is placed by the taking of the strip of land for the road; but the amount of damages assessed should not exceed in all the difference between the actual value of the entire tract immediately before, and the actual value of the remainder, immediately after the taking, excluding from consideration any enhancement of or benefit to the land not taken by reason of the opening or use of the road. We do not think it necessary in this case that there should be submitted an instruction upon the question of consequential or prospective benefits or damages that may result to the owner from the opening of the road. Such benefits or damages would be too remote and speculative to be estimated with anything like reasonable certainty, and the submission of an issue like this would only serve to confuse and mislead the jury in arriving at a cor-

ı ect adjustment of the real questions in the case. But aside from this consideration under the rule we have laid down, the owner will get all he is entitled to— just compensation for the injury and loss he has suffered.

On the question of costs this may be said: The commissioners in their report to the county court assessed the damages to the Broadway Coal Company at $35, and the damages in favor of J. L. Southard at $75. In the circuit court each of these parties succeeded in recovering more than was allowed by the commissioners. Section 4299 of the Kentucky Statutes reads: "The court may open or alter a road on condition that all or a part of the sum required to be paid to the owner and tenant and the cost of procedure, shall be paid by the applicants, or on condition that the applicants wholly or in part open or alter the road; but if the court be of the opinion that such sum or sums and the cost of proceedings shall be paid by the county, it shall order the same to be paid to the person or persons entitled thereto." In cases like this the landowner cannot be charged with any cost in the county court, although he may in that court file exceptions to the commissioners' report and demand a jury trial. The costs in that court must be paid as provided in section 4299. But if the owner is not satisfied with the judgment in the county court, and prosecutes an appeal to the circuit court, whether the appeal be taken from a judgment rendered upon the verdict of a jury or the report of the commissioners, he must pay the costs in the circuit court, unless he recovers damages in that court in a larger sum than was awarded him in the county court. But, if he succeeds in increasing in the circuit court the damages allowed him in the county court,

then the costs in both courts must be paid as directed in the statute, supra. Vice v. Eden, 113 Ky. 255, 68 S. W. 125, 24 Ky. Law Rep. 132; Story v. Little, 121 S. W. 1023, Barrall v. Quick, 111 Ky. 22, 63 S. W. 33, 23 Ky. Law Rep. 421.

Wherefore the judgment is reversed, with directions for a new trial in conformity with this opinion.