## Shipp, et al. v. City of Lexington.

(Decided February 2, 1926.)

### Appeal from Fayette Circuit Court.

1. Eminent Domain—Ordinance Condemning Land for Public Purpose Need Not Lay Over for 10 Days.—It is not necessary that ordinance for condemnation of land for public purpose, under Ky. Stats., section 3095, should lay over for 10 days, before institution of proceeding notwithstanding section 3235c-14.

2. Eminent Domain—Ordinance Directing Offset in Making Extension of Street Held Not in Conflict with Ordinance Submitting Bond Issue for Extension.—Ordinance, extending street and making offsets to avoid expense and directing condemnation of property, held not in conflict with ordinance submitting bond issue for such extension to people.

3. Eminent Domain—Ordinance for Construction of New Street Need Not be Passed Before City Condemns Property.—As Ky. Stats., section 3094, is superseded so far as it conflicts with section 3095, ordinance for construction of new street need not be passed before city condemns property therefor.

4. Eminent Domain—Not Defense to Condemnation Proceedings that Fund is Being Diverted for Purchase of Property for Private Use.—If proceeds of bond issue for purpose of extending street is being diverted to purchase of property for private use of railroad company, those diverting fund are liable therefor, but such is no defense to proceedings by city to condemn land for street.

5. Statutes—Law Providing for Condemnation of Land by City Held Not Local or Special.—Ky. Stats., section 3095, providing for condemnation of land by second class cities, does not conflict with Constitution, section 59, subsection 16, prohibiting local or special acts authorizing opening or altering of streets or highways; such act not being local or special.

6. Statutes—Law Providing for Condemnation by City of Land for Public Purposes Held Constitutional.—Ky. Stats., section 3095, giving second class cities authority to condemn land for public purposes, held not to conflict with Constitution, section 60, prohibiting grants of powers or privileges provided for by general law; being an act passed pursuant to section 156.

7. Eminent Domain—Law Relative to Condemnation by City for Public Purposes Held Not in Conflict with Constitution.—Ky. Stats., section 3095, authorizing condemnation by second class cities for public purposes, construed as authorizing award of fair and reasonable cash value of tract taken, considered in relation to entire tract, and direct damages to land not taken held not in conflict with Constitution, section 242.

8. Constitutional Law—Owners Having Hearing Before Final Judgment Not Denied Due Process Because Not Given Notice of Ap-

pointment of Commissioners.—Owners of land condemned for public purposes were not denied due process of law because given no notice of appointment of commissioners to fix damages, when they were heard before final judgment was entered.

9. Eminent Domain—Whether Landowners Could have Been Compelled to File Affidavits of Reasonable Value is Moot Question, where they have Done so.—Whether owners of land condemned for public purposes could have been compelled to accompany their exceptions to commissioners' report with affidavit stating amount of damages they believed would be reasonable is moot question on appeal, where they filed affidavits and were duly heard.

10. Stipulations—Judgment Entered on Stipulation of City will be Set Aside, Unless Stipulation is Performed as City Ratifies Action of Counsel by Taking Property.—Where city, on hearing in condemnation proceedings, stipulated that it would construct all necessary retaining walls, and final judgment required performance, stipulation must be performed or judgment set aside, and city ratified actions of its counsel by taking the property under such judgment.

N. B. HAYS for appellants.

.W. H. TOWNSEND, GUY A. HUGUELET and JAMES A. WILMORE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

The city of Lexington instituted this proceeding to condemn a strip of ground for the extension of Vine street from Limestone to Rose street. The strip in controversy is the property of Lane Shipp. Paul E. Shipp is her husband and was also made defendant in the proceeding. Judgment having been rendered in favor of the plaintiff the defendants appeal.

The proceeding was instituted November 6, 1924, under an ordinance passed October 31, 1924. By section 3235, subsection 14, every ordinance or resolution ordering the construction or reconstruction of any street or sewer shall, after its introduction and before its adoption, remain on file at least one week for public inspection in the completed form, and no such ordinance shall go into effect until the expiration of ten days after its passage, except in case of emergency. The ordinance, under which the proceeding was begun, was passed under section 3095, Kentucky Statutes, which provides that whenever, in the opinion of the governing body of the city, land or other property may be needed by the city for the

purpose of opening or widening any street the governing body may by resolution recite such need ordering the condemnation of such land for such public purpose. Under this statute, which was passed in 1918, it was not necessary that the ordinance should lie over for ten days and the action was not prematurely brought.

On September 5, 1919, the city adopted an ordinance submitting to the qualified voters of the city the proposition of incurring an indebtedness of $300,000.00 for the purpose of defraying the expenses of extending Vine street from Limestone street to Hanover avenue and Short street from Wilson street to Russell avenue and to construct a subpassway at the intersection of West High street with the railroad of the Southern Railway system. The proposition was duly submitted to the people; the election resulted in favor of the proposition, and on December 8, 1919, an ordinance was duly passed authorizing the issue and sale of the bonds of the city in the sum of $300,000.00 for these purposes. The bonds were sold, but it is earnestly insisted that the land of appellants which is proposed to be taken is not for an extension of Vine street within the proper meaning of the prior ordinances. If Vine street was extended in a direct line from Limestone street it would run through the Palace Hotel. To avoid this expense the city made an offset sufficient to avoid the hotel and extended Vine street upon this offset, which is about thirty-seven feet wide. The old portion of Vine street laid off when Lexington was small is thirty-seven feet wide. The city proposed to make the extension fifty-four feet wide, to meet the demands of the increased business in this part of the city. The street runs near the main line of the railway running through the city and in a district where wholesale business is done, and may be expected. It is earnestly insisted that an extension of Vine street must be along the outside lines of the old portion of the street extended; that the city is not authorized to make an offset of any kind or to make the new street any wider than the old. But the proposition which was submitted to the people was simply the incurring of the indebtedness. The Constitution requires this question to be submitted to the people, but no provision of the Constitution requires the people to pass on such questions as the width of the street or the making of an offset of thirty-seven feet when necessary to avoid a great expense. The ordinance directing the condemnation of the property was not, therefore, in conflict with the ordi-

nance submitting to the people the bond issue or the ordinance directing the issuing of the bonds.

It was not necessary that the city should pass an ordinance for the construction of the new street; such an ordinance may be passed after the city acquires the property and is ready to construct the street. Section 3094 is a part of the act of 1910, and so far as it conflicts is superseded by the act of 1918, which is now section 3095, Kentucky Statutes.

Among other things appellants pleaded that the trust fund was being diverted to the purchase of twelve feet across their lot for the private use of the C. & O Railway Company. If the fund is diverted improperly those diverting the fund are liable therefor, but it is no defense to this proceeding to condemn the land for public purposes that some diversion of the fund may be contemplated by the parties further along. The material question in this case is, was the land required for public purposes? and in view of the travel on the street and the business done it must be conceded that a street fifty-four feet wide is no larger than reasonably necessary for public purposes. It appears in the evidence that there is a parol understanding between the mayor of the city and an officer of the C. & O. Railway Company that the railroad company is to be allowed to lay a switch track on the south side of the extended street to serve the wholesale houses along there. But this understanding is only tentative; it has no elements of a contract; the city can only speak as to such matters by an ordinance, and when it comes to speak the whole thing may be dropped. Whether the railway company should be allowed to put a switch track in the street and on what terms is a question to be decided by the city authorities in the exercise of good judgment and the public interest. If by any contract hereafter made between the city and the railway company an additional burden is placed upon appellants' property, they may be compensated therefor in a proper proceeding. Jeffersonville & R. R. Co. v. Esterle, 13 Bush 667. But this question cannot arise until the burden is created. They cannot be compensated in this action for a burden that has not been created and may never be created. It is true a deed is produced from another owner conveying part of his lot for this street extension in which it is provided that he may have such switch track facilities. If the city does not comply with this deed it must stand the consequences, but it may yet

do this. What the track shall be or where located or
what course the city will take as to it depends on action
to be hereafter taken by its governing authorities. In
this action appellants' property is only taken for an ex-
tension of Vine street.

It is earnestly maintained that section 3095, Ken-
tucky Statutes, is unconstitutional. It does not conflict
with section 59, subsection 16, of the Constitution pro-
hibiting the General Assembly from passing local or spe-
cial acts to authorize the opening or altering of streets
or highways. For this is an act applying to all cities of
the second class, and is not a local or special act within
the meaning of that section of the Constitution. The act
does not conflict with section 60 of the Constitution pro-
hibiting the legislature from passing any law granting
powers or privileges in any case where the granting of
such powers or privileges shall have been provided for by
a general law. The act in question is not an act granting
powers or privileges to any individual, but is an act reg-
ulating all cities of the second class passed pursuant to
section 156 of the Constitution directing the legislature
to divide the cities of the state into six classes and define
the powers of each class by general laws, so that all mu-
nicipal corporations of the same class shall possess the
same powers.

The act does not conflict with section 242 of the Con-
stitution as construed by the circuit court. The court
gave the jury these instructions defining just compensa-
tion which appellants should be allowed:

## 1.

"The jury will find for the defendants, Lane
Shipp and Paul Shipp, such a sum as you may believe
from the evidence is the fair and reasonable cash
value of the tract of land 54 feet by 60 feet sought to
be condemned, considering it in relation to the entire
tract of which the strip is a part, and also such other
direct damages, if any, as you may believe from the
evidence will directly result to the remainder of the
tract owned by the defendants, by reason of the sit-
uation in which it is placed by the taking of said
strip of land, but your finding under this instruc-
tion should not exceed in all the amount which the
jury believes from the evidence is the difference be-
tween the actual market value of the remainder im-
mediately after the taking of said strip, excluding

from both estimates any enhancement of the land, if any, by reason of the construction of the street on said strip.''

2.

''The jury should also take into consideration all of the advantages and disadvantages which you may believe from the evidence can be reasonably anticipated to result from the proper use of the land for the purposes for which it is being condemned, and if the jury believe from the evidence that such disadvantages will exceed such advantages, then you will allow the defendants what you believe from the evidence will remunerate them therefor, but if you believe from the evidence that such advantages equal or exceed such disadvantages, then you will find for the defendant only the direct damages as set out and defined in the first instruction, and nothing under this instruction.''

3.

''By actual value or market value as used in these instructions is meant that sum which the owner, who desires to sell but is not compelled to do so would take for it in its present condition, and what a purchaser, who desires to purchase but is not compelled to do so, would give for it under the circumstances.''

These instructions have often been approved under section 242 of the Constitution. Section 3095 as thus construed by the circuit court conforms with the constitutional provision, and this is evidently what the legislature meant. The act before the court in Broadway Coal Co. v. Smith, 136 Ky. 725, read differently, but such a defect in the act would not render the whole act void; it would only render void so much of the act as prescribed a different measure of compensation from that provided in the Constitution.

Appellants cannot complain that they were denied due process of law by the act, because they had no notice of the appointment of commissioners to fix the damages. The act does not require such notice. The settled rule on the subject is thus tersely stated in 6 R. C. L. 452:

''Due process of law is afforded litigants if they have an opportunity to be heard at any time before final judgment is entered, but a hearing, or an op-

portunity to be heard, prior to judgment, is absolutely essential.''

Appellants were heard before a final judgment was entered. They cannot complain that they were required by the act when they filed exceptions to accompany their exceptions to the commissioners' report with their affidavit stating the amount of damages which they believe would be just and reasonable, supported by affidavits of two other disinterested persons. They filed these affidavits and were duly heard. Whether they could have been compelled to file the affidavits under the constitutional provision is purely a moot question here.

On the trial of the case it appeared by the proof that the proposed street would cut through appellants' property and that a retaining wall would be necessary on either side for the protection of the property. It also appeared that the city in obtaining by contract other property nearby had agreed to put in at its own cost all necessary retaining walls, sewers, curbing and guttering. There was some conflict in the evidence as to the cost and thereupon the city filed a written stipulation that it would construct Vine street, abutting the property sought to be condemned, free of all cost to appellants, including all necessary retaining walls, sewers and guttering. Under this stipulation it was adjudged by the court in its final judgment that the city of Lexington perform the foregoing stipulation in all respects. The city takes the property under this judgment and is charged with the performance of this stipulation. It can not keep the property and not perform the stipulation. The judgment is an entirety; the stipulation must be performed or the judgment must be set aside. It is needless, therefore, to inquire here whether the city authorized its counsel to make the stipulation, for the city ratifies the action of its counsel by taking the property under the judgment.

It is complained that some questions as to incidental advantages and incidental benefits which were not properly framed were asked and answered during the trial. But on the whole case we cannot see that the substantial rights of appellants were in any wise prejudiced, for not only were the instructions to the jury absolutely clear, but time and again, as shown by the record, the court stated in the hearing of the jury and of the parties the rule on the subject so clearly that there was no room for misunderstanding.

Some other questions are discussed, but they are unnecessary to the decision of the case. A number of authorities from other states are cited, but they turn on provisions of law different from ours, or on facts unlike those here presented. The verdict of the jury is not plainly against the evidence, and on the whole case the court is unable to see that there was any error to the prejudice of appellants' substantial rights.

Judgment affirmed.