GREENUP COUNTY, Kentucky, Appellant,

v.

Add REDMOND, Appellee.

Court of Appeals of Kentucky.

May 6, 1960.

Charles M. Daniels, Greenup, County Atty., Diederich & Lycan, Ashland, for appellant.

Frank Warnock, John F. Coldiron, Greenup, for appellee.

PALMORE, Judge.

This is a condemnation proceeding in which a jury awarded the appellee a total

of $13,500 as damages on account of the taking of a 7.9-acre strip of land through her farm for highway purposes. The principal grounds relied on for reversal are that the damages were excessive and that they included an improper item of $5,000 for the building of an underpass connecting the two portions of the farm divided by the new road. Since we have concluded that the latter point is well taken it is unnecessary to consider the question of whether the remainder of the damages was excessive.

Appellee's farm comprises 300 acres in Greenup County bounded on the east by the Little Sandy River, which runs from south to north. Kentucky Highway No. 1 runs through the tract in a north-south direction roughly parallel with the Little Sandy River, 100 acres being located between the highway and the river and the other 200 acres on the west side of the highway. The road which has been acquired by this condemnation proceeding leads westwardly from Route 1 to Greenbo Lake and cuts through the 200-acre westerly portion of the farm, leaving 50 acres on one side of its center line and 150 acres on the other.

Most of the improvements on the farm are located on the 100 acres between Route 1 and the Little Sandy River. For many years the property has been used exclusively as a dairy farm, and the dairy herd at the time of trial consisted of about 60 head of registered cattle. Except for two small ponds the water supply for the cattle on the west 200 acres is a branch called Sinking Creek, which runs by or through the 50-acre portion of the land cut off by the new road but does not touch any part of the remaining 150 acres on the west side of Route 1. The 200 acres west of Route 1 is largely hill and pasture land, and it has been customary to keep the dairy herd on the west side during the day and on the east side, where the barn is located, at night, the cattle being driven across the road in the morning and back in the evening. The new road, of course, entails the further necessity of driving them back and forth from time to time between the 50 acres and the 150 acres on the west side of Route 1, particularly at times of the year when the ponds are stagnant or dry and Sinking Creek provides the only good water supply on that side of the farm.

Commissioners appointed by the county court valued the 7.9 acres of land taken at $900, estimated the damage to the remainder of the farm at $1,600, and awarded a total of $2,500. Exceptions filed by the landowner estimated the value of land and improvements taken at $3,000 and incidental damage at $17,000. Following an award of $2,500 by the county court the landowner appealed to the circuit court, adopting her exceptions as part of the statement of appeal. By an amended statement of appeal it was further alleged that the taking of the roadway would necessitate new fencing and gates at a cost of $3,000 and underpasses at a cost of $12,000, these amounts being specified as items of damage included in the over-all figure of $17,000 pleaded as damage to the remainder of the tract. Thus the pleading on which this case was tried stated damages as follows: $3,000 as the value of land and improvements taken, $3,000 for new fencing, $12,000 for underpasses, and (by process of elimination) $2,000 for all other damages to the remainder of the property, totaling $20,000.

The condemnor made no attack on the landowner's allegations with respect to the building of underpasses, but objection was made (unsuccessfully) to evidence presented in that connection. The plans of the highway department (for which the county acquired the roadway) called only for approaches and gateways for the driving of the cattle across the surface of the road. The owner's son, who is active in the management of the farm, testified that one or more underpasses would not restore the farm to its condition prior to the taking. Another witness, a former highway engineer, testified that the cheapest cost at which an underpass could be constructed

was $5,000. He said also that according to his understanding such a project would require the approval of the county and the state highway department. This was all of the evidence with respect to underpasses.

The instructions given to the jury as to damage to the remainder of the property, following the form set forth in Stanley's Instructions to Juries, § 360, included "such additional fencing, if any, as might be necessary," but did not cover any other improvements.

Damages awarded by the jury verdict were as follows:

```
"  $1600  for land
     200  for garage
    3000  for fencing
    5000  for underpass
    3700  for damages
    ─────
  $13,500"
```

All matters necessary to the disposition of this appeal were properly raised by appellant's motion and grounds for a new trial.

■ The landowner, citing Stanley's Instructions to Juries, § 359, contends that correct instructions in this type of case permit damages for "other improvements" as well as new fencing and that the separation of the "5000 for underpass" item in the verdict from the $3,700 awarded for damage to the remainder of the farm was at most an irregularity of form rather than substance. From this it is argued that appellant's failure to raise objection at the time the verdict was returned, so that it might be corrected by the jury, waived the defect. Thacker's Adm'r v. Salyers, Ky. 1956, 290 S.W.2d 830; Adams v. Com., 1941, 285 Ky. 38, 146 S.W.2d 7. Appellant, on the other hand, points out that the instructions did not in fact allow for "other improvements" and that the verdict in providing for an underpass was contrary to law. A verdict contrary to the instructions,

right or wrong, is contrary to law. Brumley v. Mary Gail Coal Co., Ky.1952, 246 S.W.2d 148; Franklin County v. Bailey, 1933, 250 Ky. 528, 63 S.W.2d 622.

■ The general rule of law is that the costs of fencing and other improvements necessitated by the taking of a portion of an owner's property may be proved and considered as bearing on the diminution in the market value of the portion not taken, but are not allowed as separate and specific items of recovery. 29 C.J.S. Eminent Domain § 164, pp. 1035, et seq.; Nichols, Eminent Domain (3d ed.), Vol. 4, §§ 14.24321, 14.247; Lewis, Eminent Domain (3d ed.), Vol. II, §§ 737, 739. See also annotation, 10 A.L.R. 451 et seq. The law of Kentucky represents an exception to that rule as to fencing made necessary by the opening of the road, which has long been allowable as a separate item. Louisville, St. L. & T. R. Co. v. Barrett, 1891, 91 Ky. 487, 16 S.W. 278; Broadway Coal Mining Co. v. Smith, 1910, 136 Ky. 725, 125 S.W. 157, 26 L.R.A.,N.S., 565; Crittenden County v. Towery, 1936, 264 Ky. 606, 95 S.W.2d 233. A reason for this exception may be that for well over half a century the road condemnation statute itself, in stating what compensation was to be assessed by the commissioners in county court, specifically included "the additional fencing which will be thereby rendered necessary." See Robinson v. Robinson, 1864, 1 Duv. 162, 163, 62 Ky. 162, 163; Revised Statutes of Kentucky (Wickliffe, Turner & Nicholas, 1852) c. 84, § 8; and § 4292, Carroll's Kentucky Statutes (1908). Although this language has since disappeared from the statutes it has continued to be a part of the law of eminent domain in Kentucky.

■ The instruction set forth in § 359, Stanley's Instructions to Juries, was approved in Louisville & N. R. Co v. Hargis, 1929, 230 Ky. 806, 20 S.W.2d 991, on authority of Broadway Coal Mining Co. v. Smith, 1910, 136 Ky. 725, 125 S.W. 157, 26 L.R.A.,N.S., 565. However, to the ex-

tent that "other improvements" are included in the instruction it is not supported by the latter case, nor have we been referred to any decision in which this particular aspect of the instruction has been discussed and approved. On the contrary, in Com. v. Combs, 1932, 244 Ky. 204, 50 S.W.2d 497, it was said that the words "other improvements" are too indefinite for use in such an instruction. Since the only proper test of damages to the portion of the property not taken is the diminution of its market value, it is not proper for the instructions to permit recovery of the actual or estimated cost of specific items of construction or reconstruction other than necessary fencing. Especially must this be true where the over-all depreciation in value of the remainder area has been estimated by the witnesses on the basis of its reduced value without the taking of the proposed remedial measures, because otherwise the owner would receive duplicate payment for the same damage. Cf. Nichols, Eminent Domain, Vol. 4, § 14.247. Therefore, the instructions as given were correct.

■ In awarding $3,700 for incidental damages exclusive of the cost of fencing and the cost of the proposed underpass the verdict exceeded the amount pleaded, which was $2,000. In awarding $5,000 for an underpass it included an item not authorized by the instructions. We cannot say that these were mere irregularities of form on the theory that the amounts were within the $17,000 pleaded as damages to the remainder area.

■ The expenses of making improvements which may be proved as bearing on the diminution in market value of the remainder area are limited to improvements that are reasonably necessary. 29 C.J.S. Eminent Domain § 164, pp. 1035 et seq. An underpass might be of convenience to the landowner both in this and every other case where a farm is severed by a public road, but it certainly cannot be called a necessity. Moreover, it is by no means certain that an underpass can be constructed without interference to the public right-of-way. Whether an underpass would be constructed was exclusively at the option of the public authority in planning the highway. It elected to provide approaches for surface crossings only. The damage was therefore to be estimated on that basis alone. Louisville & N. R. Co. v. Hargis, 1929, 230 Ky. 806, 20 S.W.2d 991, does not stand for a different principle. There the *condemnor* was permitted to prove that its plans called for an underpass, and properly so, for the witnesses could not intelligently fix the damages without knowing exactly what the condition would be upon completion of the road. In the instant case completion of the road according to the condemnor's plans leaves the landowner with surface crossings but no underpass. The opinions of the witnesses as to the reduction in market value of the remainder of the farm must be based on that hypothesis alone. Any other approach would reduce to shifting sands indeed the ground rules applicable to the opinion evidence of the witnesses in estimating the value of the remainder area before and after the taking. Therefore, not only was the item of expense for an underpass an improper element of recovery, as such, but it was also an improper subject of proof.

■ During the course of the trial the condemnor, in order to prove that the construction of the road would enhance rather than decrease the value of the remaining land, sought to introduce evidence of persons who would buy and prices they would pay. This would have been utterly improper, and the court rightly excluded it. Brock v. Harlan County, 1944, 297 Ky. 113, 179 S.W.2d 202.

The cause is reversed with directions to grant a new trial.